STATE of Oklahoma, ex rel. STATE INSURANCE FUND, and Theodore Riley, Plaintiffs in Error,

v.

Ella BONE, Defendant in Error.

No. 38150.

Supreme Court of Oklahoma.

June 30, 1959.

Rehearing Denied Sept. 29, 1959.

Mac Q. Williamson, Atty. Gen., Fred Hansen, First Asst. Atty. Gen., Jack Baird, Dudley, Dudley & Dudley, by Paul Dudley, Oklahoma City, for plaintiffs in error.

John B. Ogden, Oklahoma City, Busby, Stanfield, Deaton & West, by Orel Busby, Ada, for defendant in error.

JOHNSON, Justice.

This is an appeal from a jury verdict and judgment for Ella Bone against Theodore Riley, employee of the State Insurance Fund, and the State Insurance Fund for damages for personal injuries sustained by her while she was riding in a car driven by her husband, which collided with a car driven by the Fund's employee, Theodore Riley. It was alleged that Riley's negligence in driving his car while on a mission for the State Insurance Fund caused the plaintiff's damages.

Plaintiffs in error, among other things, contend that the State Insurance Fund is a department of the State and that by reason of its sovereign immunity from suits for damages arising from the torts of its officials and employees, it is not liable for damages caused by the negligence of Theodore Riley, its employee. On the other hand, defendant in error contends that the State Insurance Fund was engaged in a purely business enterprise as distinguished from a governmental function, and that as such the State waived its sovereign immunity and became, as any other insurance company, amenable to actions in tort. These opposing contentions constitute the principal issue in this case.

We first considered the Fund's contention on this phase of the case in State ex rel. State Ins. Fund v. District Court of Oklahoma County, Okl., 278 P.2d 841. In that case the Fund sought a writ of prohibition, prohibiting the District Court from proceeding further in the case in so far as the State Insurance Fund was concerned. The District Court had overruled the Fund's demurrer and objections to the court's jurisdiction over it on the grounds that it was a department of the State of Oklahoma and as such could not be held for the torts of its employees in the absence of express statutory or constitutional consent, and set the case for trial. We therein said that the Fund as a department of the State was not liable in a civil action for damages for the torts of one of its officers or employees. Citing Jack v. State, 183 Okl. 375, 82 P.2d 1033; Hawks v. Walsh, 177 Okl. 564, 61 P.2d 1109. We granted the writ with directions to dismiss the action in so far as the Fund was concerned.

The record shows that the case was dismissed in compliance with the writ on February 10, 1955, leaving the action pending as to the Fund's employee. On July 26, 1955, in accord with 12 O.S.1951 § 100, an amended petition was filed and new summons issued against the State Insurance Fund.

The amended petition alleged, among other things, that the Fund was operated in all respects as any other private insurance company; that it employs auditors, attorneys, doctors, clerks and all employees and officers necessary for the operation of an insurance company and maintains offices in downtown Oklahoma City and is engaged in a competitive business function with all other insurance companies in this State, and is not entitled to any immunity of any kind for any of its acts or the acts of its servants or employees. The petition further alleged that under the provision of a special act, House Bill 875, 1955 O.S.L., pg. 596, the plaintiff was authorized to bring the action against the Fund.

The Special Act is concededly unconstitutional, Duncan v. State, Okl., 311 P.2d 203; but the question of the State Insurance Fund's lack of immunity from tort ac-

tions arising out of the negligence of its employees when it is engaged in a competitive business enterprise and not a governmental function, nor operating a business under a mandatory constitutional provision for a public purpose, is of prime importance and requires a re-examination of our holding in State ex rel. State Ins. Fund v. District Court of Oklahoma County, supra, and other applicable cases or authorities.

▆▆ The theory of sovereign immunity originated in the fiction that the king can do no wrong. The general expression of the doctrine of sovereign immunity is that the state may not be sued without its consent. People v. Superior Court, 29 Cal.2d 754, 178 P.2d 1, 40 A.L.R.2d 919. However, suits against state agencies with respect to matters in which they have assumed to act in a private or non-governmental capacity are not suits against the state. In 81 C.J.S. States § 216, subdivision b, paragraph (4) Nongovernmental Agencies and Corporations, it is stated:

"Suits against state agencies with relation to matters in which they have assumed to act in a private or non-governmental capacity, and various suits against certain corporations created by the state for public purposes, but to engage in matters partaking more of the nature of ordinary business rather than functions of a governmental or political character, are not regarded as suits against the state. The latter is true, although the state may own the stock or property of such a corporation, for by engaging in business operations through a corporation the state divests itself so far of its sovereign character, and by implication consents to suits against the corporation. * * *"

In Bank of United States v. Planters' Bank of Georgia, 22 U.S. 904, 6 L.Ed. 244, as early as 1824, Chief Justice Marshall, in delivering an opinion on "sovereign immunity," said:

"It is, we think, a sound principle, that when a government becomes a partner in any trading company, it divests itself, so far as concerns the transactions of that company, of its sovereign character, and takes that of a private citizen. Instead of communicating to the company its privileges and its prerogatives, it descends to a level with those with whom it associates itself, and takes the character which belongs to its associates, and to the business which is to be transacted. Thus, many states of this Union who have an interest in banks, are not suable even in their own courts; yet they never exempt the corporation from being sued. The state of Georgia, by giving to the bank the capacity to sue and be sued, voluntarily strips itself of its sovereign character, so far as respects the transactions of the bank, and waives all the privileges of that character. As a member of a corporation, a government never exercises its sovereignty. It acts merely as a corporator, and exercises no other power in the management of the affairs of the corporation, than are expressly given by the incorporating act."

This rule was first applied by this court in Choctaw Pressed Brick Co. v. Townsend, 108 Okl. 235, 236 P. 46. The rule was also applied in Grand River Dam Authority v. Grand-Hydro, 188 Okl. 506, 111 P.2d 488.

In the Choctaw Pressed Brick case, supra, in the sixth paragraph of the syllabus, this court held:

"6. (a) While section 31, art. 2, of the Constitution, authorizes the state to engage in business, yet such section does not make it compulsory nor mandatory upon the state to engage in any kind of business in a governmental capacity, nor in the exercise of any governmental function.

"(b) Where the state through its officers engage in the manufacture and sale of convict made pressed brick to the public, it is not thus acting in the exercise of its governmental functions,

but is merely engaged in a business enterprise as such.

"(c) Where a state through its public officers engages in a purely business enterprise as such, in the manufacture and sale of convict made goods to the public, such officers are subject to the same requirements of law as to the labeling of convict made goods before placing same upon the public market as are other business enterprises subjected."

In the body of the opinion it is stated:

"It is contended that injunction will not issue against the defendants herein for the reason that the state nor its officers are included within, or at least not specifically named in the statute in question. But it must be borne in mind that the state, in engaging in a mere business enterprise, is not thereby discharging a governmental function, but is a mere business institution, the same as a corporation or partnership or an individual.

"While section 31, art. 2, of the Constitution, authorizes the state to engage in business, yet the Constitution does not require the state nor make it mandatory upon the state to engage in business neither as a business enterprise nor as a governmental function. It merely authorizes the state to engage in business, if it chooses to do so, or to decline, if it prefers not to do so, the same as it would authorize a foreign or domestic corporation or other business institutions to engage in business, but in neither event does the business enterprise in which the state may be engaged become a governmental function. The state becomes, in such case, a mere business institution, and as such subject to the same constitutional and statutory requirements as are other business enterprises subjected in the manufacture and sale of 'convict made goods.' So, when the Legislature enacted the foregoing statutes, it was the obvious intention that

all business enterprises dealing in 'convict made goods' should be required to label such goods as provided by such statute, whether such business enterprise be an individual, partnership, corporation, or be financed and run with convict labor by the state, in the capacity of a business institution. The rule would be different, however, if the engaging in business enterprises by the state were mandatorily made a governmental function by the Constitution but said section 31, art. 2, of the Constitution is not mandatory upon the state, nor upon any department of state government, to enter into any kind of business as a governmental function or in a governmental capacity, but said section merely authorizes the state to engage in business as a business enterprise.

* * * * * *

"The next ground is that it is a suit against the state. With this contention we cannot agree; it is neither a suit against the state nor a suit to make the state a party defendant, nor a suit against the state for compensation in damages, nor a suit in the name of the state to enforce the penalties prescribed by the statute for the violation thereof, nor a suit to enjoin state officers from discharging their duties. A state cannot discharge a duty to the state by violating the law of the state. It is no more than a suit to enjoin the agents of the state, engaged in the name of the state in a purely business enterprise, from causing irreparable injury to plaintiff's property rights by violating the statutes which require convict made goods to be labeled as such before being placed upon the public markets."

From our research the case of Rauschan v. Gilbert, 80 Cal.App. 754, 253 P. 173, by the California Court of Appeals, is the only one involving a state insurance fund and legal problems such as are here involved in that it was an action for the tort

of the officer or agent of the State Compensation Insurance Fund, which fund was created for the purpose of selling liability insurance, as in the instant case, under statutes similar and comparable to our statutes creating our "State Insurance Fund." It was there held that an action is not authorized against the State Compensation Insurance Fund for torts of its officers or agents on the theory that it is a business enterprise conducted by the state for profit, since it appeared from the statute that the Compensation Fund was not intended to be managed for profit; and that the state in the prosecution of such private business enterprise did not waive its immunity for liability for torts of its officers or agents employed in the administration of the affairs of such enterprise. However, this case was overruled, or disapproved, by the Supreme Court of California in the later case of People v. Superior Court, supra. Therein it was said [29 Cal.2d 754, 178 P.2d 5]:

> "With the possible exception of Rauschan v. State Comp. Ins. Fund, supra, 80 Cal.App. 754, 253 P. 173, which followed Riddoch v. State, supra, 68 Wash. 329, 123 P. 450, 42 L.R.A., N.S., 251, Ann.Cas.1913E, 1033, the decisions in this state do not foreclose, but seem to favor the proposition that sovereign liability exists for negligence in the state operation of an industrial or business enterprise. Therefore, pursuant to those decisions headed by the case of Green v. State, supra, 73 Cal. 29, 11 P. 602, 14 P. 610, it should be concluded that where the state engages in industrial or business enterprises, as distinguished from purely governmental activities, tort liability attaches and may be adjudicated pursuant to the consent statute. Insofar as the decision in Rauschan v. State Comp. Ins. Fund, supra, 80 Cal.App. 754, 253 P. 173, is not in harmony with the conclusion herein, it is disapproved."

In Grand Hydro v. Grand River Dam Authority, 192 Okl. 693, 139 P.2d 798, 805, we found that the creation of the Grand River Dam Authority was the exercise of the power of the state to engage in business, and that the mere fact that the Authority was an agency of the state did not extend to it sovereign immunity.

Therein we said:

> "The Authority was bound by the agreement which was entered into in furtherance of the settlement, or of defining issues involved in litigation. For, as said in Grand River Dam Authority v. Grand-Hydro, 188 Okl. 506, 111 P.2d 488, 489, 'its transactions are akin to those of private enterprises, and the mere fact that it is an agency of the government does not extend to it the immunity of the sovereign.' And further, 'The authority cannot exercise the powers as conferred upon it, avail itself of judicial process and, in the absence of legislation relieving it, escape the usual incidents of litigation that fall upon private litigants.' Id., 188 Okl. 506, 111 P.2d 489."

This court in State Insurance Fund v. Feldgreber, Okl.1957, 317 P.2d 203, 205, in the second paragraph of the syllabus said:

> "The Legislature of this state by the enactment of 85 O.S.1951 section 133 waived the sovereign immunity of the State Insurance Fund from all suits arising out of any act, deed, matter or things made, omitted, entered into, done or suffered in connection with the State Insurance Fund and in administration and management of the business and affairs of said Fund."

The more recent case of State Insurance Fund v. Taron, Okl.1958, 333 P.2d 508, is to the same effect.

Sections 132 and 133, 85 O.S.1951, provide for the operation of an insurance (company) business to be carried on as fully and completely as any private insurance carrier might or could do.

Section 132 provides:

> "The State Insurance Fund Commissioner is hereby vested with full power,

authority and jurisdiction over the State Insurance Fund, and may do and perform any and all things whether herein specifically designated or in addition thereto which are necessary or convenient in the exercise of any power, authority, or jurisdiction over such Fund in the administration thereof, or in connection with the insurance business to be carried on by him under the provisions of this Act, as fully and completely as a governing body of a private insurance carrier might or could do.

"The Board of Managers of the State Insurance Fund shall have full power and authority to fix and determine the rates to be charged by the State Insurance Fund for insurance."

Section 133 provides:

"The Commissioner shall have full power and authority to manage and conduct all business and affairs relating to the State Insurance Fund, all of which business and affairs shall be conducted under the name of the State Insurance Fund, and in that name and without any other name or title, the Commissioner may:

"(1) Sue and be sued in all the courts of the State, in all actions arising out of any act, deed, matter, or things made, omitted, entered into, done or suffered in connection with the State Insurance Fund, and administer, manage, or conduct all the business and affairs relating thereto.

"(2) Make and enter into contracts of insurance as herein provided, and such other contracts or obligations relating to the State Insurance Fund, as are authorized or permitted under the provisions of this Act.

"(3) Invest and reinvest the moneys belonging to the State Insurance Fund as hereinafter provided.

"(4) Conduct all business and affairs, relating to the said State Insur-ance Fund, whether herein specifically designated or in addition thereto.

"(5) The Commissioner may delegate to any officer of the State Insurance Fund, under such rules and regulations, and subject to such conditions as he may from time to time prescribe, any of the powers, functions or duties conferred or imposed on the Commissioner under the provisions of this Act in connection with the State Insurance Fund, the administration, management and conduct of the business or affairs relating thereto, and the officer or officers to whom such delegation is made may exercise the power and functions and perform the duties delegated with the same force and effect as the Commissioner, but subject to his approval.

"(6) The Board of Managers of the State Insurance Fund shall not, nor shall the Commissioner or any officer or employee of the State Insurance Fund be personally liable in his private capacity for or on account of any act performed or contract or other obligation entered into or undertaken in an official capacity in good faith and without intent to defraud, in connection with the administration, management or conduct of the State Insurance Fund, its business or other affairs relating thereto."

We think that the authorization of suits against the State Insurance Fund in no way contravenes the constitutional limitation of suits against the State. Under no circumstances can the general funds of the State be reached in order to satisfy an obligation of the Fund. Independent control exists in the Fund to operate and maintain an insurance company in the same manner as may be done by any privately owned insurance company. These factors permit it (the Fund) to be regarded as an independent business enterprise or entity. Thus the State Insurance Fund, as an agency or instrumentality of the State, is not within the traditional immunity afforded

the sovereign. People ex rel. Coutrakon v. Lohr, 9 Ill.2d 539, 138 N.E.2d 471; Grand Hydro v. Grand River Dam Authority, supra; People v. Superior Court, supra; Choctaw Pressed Brick case, supra, and Bank of United States v. Planters' Bank of Georgia, supra, and the case of State ex rel. State Ins. Fund v. District Court of Oklahoma County, supra, in so far as it conflicts with our holding in the instant case is overruled; and we now hold that the State Insurance Fund is a business enterprise as distinguished from purely governmental activities, and tort liability attaches and may be adjudicated pursuant to the consent statute, Sec. 133, 85 O.S.1951, supra. In creating and undertaking the operation of the State Insurance Fund, it is reasonable to think that the same responsibilities were intended to be assumed as ordinary insurance companies are obliged to assume. The statutes under which the Fund operates recognize and declare this intention. The Legislature might well deem it a narrow policy for the State to undertake such management, without making adequate provision for meeting the ordinary responsibilities which are incident to this kind of business. Many of these are imposed by the common law on all insurance companies carrying liability insurance. Their expediency and wisdom have been recognized by the Legislature. The State, while holding all other and competing insurance companies to a full measure of common law and statutory responsibility, might well hesitate to say to the public, "We invite your patronage for this State Insurance Fund, but do not intend to furnish the same remedies, in case of loss or injury, as other insurance companies are subject to." Such a course might well be thought, on the one hand, to take an unfair advantage of other insurance companies, and, on the other hand, to impede its prospect of ultimate success and hinder or defeat the development of business. No sanction is to be found in the statutes for such view. It is nowhere provided that a more limited responsibility or less perfect remedies shall exist in case of loss. On the contrary, there are statutory provisions looking to a different result. If it could be supposed that on merely business grounds it was found expedient to put the State Insurance Fund on a different footing from ordinary insurance companies in respect to liability for losses or injuries resulting from the negligence of its agents and employees engaged in the performance of their duties, then it is reasonable to think that full and plain words to express that intention would be found in the statutes. For an application of this philosophy see Amstein v. Gardner, 1883, 134 Mass. 4, and other authorities cited herein on sovereign immunity. Therefore, the contention that the suit is against the state or a department of the State and may not be maintained because of sovereign immunity is without merit as under the circumstances of this case the State Insurance Fund, just as any private insurance company, may be sued for losses or injuries resulting from the negligence of its agents and employees engaged in the performance of their duties.

■■ It is next contended that the verdict and judgment based thereon is not sustained by the evidence and is contrary to both the evidence and the law. However, this contention is not briefed or emphasized in the briefs of plaintiffs in error; and, from an examination of the record in this case we find no substantial errors of law or fact sufficient to affect the cause of justice, or to persuade us to depart from the long established rule that a judgment on a jury's verdict determining question of negligence will not be disturbed where there is evidence reasonably tending to support the judgment, Keen Bottling Co. v. Morgan, 154 Okl. 167, 7 P.2d 147; or from the more general rule that a jury verdict and judgment based thereon will not be disturbed on appeal if there is any evidence reasonably tending to sustain the judgment.

■ The State Insurance Fund separately contends that the trial court erred in giving Instructions Nos. 10 and 12, and in

refusing to give its requested Instructions Nos. 1, 3, 4, 9, 10, 11, 13, 14 and 15. The other plaintiff in error (Riley, the employee) separately contends that the trial court erred in giving Instructions 10 and 11, and in refusing to give his requested instructions Nos. 2, 3, 4, 9, 10, 11, 12, 14 and 15, and both plaintiffs in error argue that the trial court failed to instruct the jury on their alleged theory of the case, which was that the accident was unavoidable and excusable due to the weather conditions and slippery condition of the highway. There was evidence to support this theory. However, we think that Instruction No. 14 given by the trial court was sufficient to cover the theory of unavoidable accident. It provided:

"An unavoidable accident is a casualty which occurs without negligence on the part of either party, and when all means which common prudence suggests have been used to prevent it, and if you find from the evidence in this case that the accident was unavoidable and occurred without the fault or negligence of either party, then your verdict must be for the defendant."

An examination of the instructions given reveals that they fairly and reasonably presented the issues to the jury. We have often said that where the instructions to the jury fairly and reasonably present the issues joined by the pleadings and presented by the evidence, the instructions are sufficient. See Great Atlantic & Pacific Tea Co. v. Mullen, Okl., 301 P.2d 217.

We find that the verdict and judgment based thereon in the instant case is so sustained, and, also, that it is not contrary to the law.

Judgment affirmed.

DAVISON, C. J., WILLIAMS, V. C. J., and WELCH and BLACKBIRD, JJ., concur.

HALLEY, JACKSON, IRWIN and BERRY, JJ., dissent.