Dear Sentate Stipe,
¶ 0 The Attorney General has received your requests for an official opinion asking, in effect:
1. Is the State Insurance Fund a "state agency" for purposes ofthe Oklahoma Central Purchasing Act, 74 O.S. 85.1 (1981) etseq., and amendments thereto?
2. Is the State Insurance Fund required to comply with theOklahoma Central Purchasing Act in the acquisition of telephoneequipment, motor vehicles, and other material and equipment thatis deemed necessary or convenient for the operation of the Fund'sinsurance business?
3. Is the State Insurance Fund required to comply with theOklahoma Central Purchasing Act in its retention of the servicesof a financial advisor and fund manager?
 I.
¶ 1 The Oklahoma Central Purchasing Act, 74 O.S. 85.1 (1987) et seq., expressly provides that "all activities of any stateagency . . . relating to purchasing shall be under the direction of the Purchasing Division [of the Office of Public Affairs], except such acquisitions as are excluded by the Oklahoma Central Purchasing Act." Id., 85.3. (Emphasis added). The pertinent provisions of 74 O.S. 85.4 and 74 O.S. 85.5,
also provide:
74 O.S. 85.4.
 A. Except as provided in 74 O.S. 85.12 of this title, every state agency shall acquire all contractual services, supplies, equipment, or materials used, consumed or spent by such agency in the performance of its official functions by the presentation of requisitions for such services, supplies, materials, or equipment to the Purchasing Division established in 74 O.S. 85.3 of this title and no such items or service shall be acquired by any state agency for such presentation of such requisition and receipt of the items or service requisitioned through the Purchasing Division.
 74 O.S. 85.5.
 Subject to the provisions of 74 O.S. 85.4 of this title, the State Purchasing Director, under the supervision of the Director of Public Affairs, shall have sole and exclusive authority and responsibility for the acquisition of all materials, supplies, equipment, and services acquired, used or consumed by agencies of the state government. The State Purchasing Director, after consultation with the requesting or purchasing agency, shall have authority to determine the particular brand, model, or other specific classification of each item or group of materials, supplies, equipment, or services to be acquired for such use or consumption, and to draft specifications establishing the requirements for all such leases or purchases under the restrictions provided in the Oklahoma Central Purchasing Act.
(Emphasis added).
¶ 2 In view of these statutory provisions, the key inquiry to determine whether the Fund is subject to the requirements of the Central Purchasing Act, is whether the Fund is a "state agency" for purposes of that Act.
¶ 3 Section 85.2 of the Central Purchasing Act contains the following definitions:
 As used in the Oklahoma Central Purchasing Act the following terms, in addition to their usual definitions, shall have the meanings ascribed to them in this section unless context otherwise requires:
 1. "State agency" or "agency" includes any office, officer, bureau, board, counsel, court, commission, institution, unit, division, body or house of the executive or judicial branches of the state government, whether elected or appointed, excluding only municipalities, counties and other governmental subdivisions of the state.
74 O.S. 85.2 (1987) (Emphasis added).
¶ 4 A review of the applicable authorities demonstrates that the State Insurance Fund falls within this definition of a "state agency." The statutes creating the State Insurance Fund vest supervisory powers over the administration and operation of the fund in a "board to be known as the Board of Managers of theState Insurance Fund." 85 O.S. 131a (1987). Moreover, the powers conferred by the Legislature on the Board and the State Insurance Fund Commissioner in 85 O.S. 131 (1981) et seq., and amendments thereto, are "executive powers." See, e.g.,
Webster's Ninth New Collegiate Dictionary (1985) (defining "executive" as having "administrative" or "managerial" responsibility); Spivey v. State of Oklahoma, 104 P.2d 263, 267
(Okla.Crim.App. 1940) (officers which are neither judicial nor legislative necessarily belong to the executive branch of government). In view of the foregoing, the State Insurance Fund clearly constitutes a "board . . . of the executive branch ofstate government," one of the definitions of "state agency" in the Central Purchasing Act.
¶ 5 Our conclusion that the State Insurance Fund falls within the scope of the Central Purchasing Act finds further support in prior opinions of the Supreme Court of Oklahoma and the Attorney General. In State v. Bone, 344 P.2d 562, 568 (Okla. 1959), the Supreme Court explicitly recognized that the State Insurance Fund is an "agency or instrumentality of the State," and in Attorney General Opinion No. 63-119, the Attorney General held that the State Insurance Fund constituted a "state agency" for the purposes of the merit system of personnel administration, construing a definitional provision of the then current version of 74 O.S. 802, that was similar to the definition of "state agency" in the Central Purchasing Act. Significantly, both the Bone decision and Attorney General Opinion No. 63-119 were issued prior to the most recent amendments to the Central Purchasing Act in 1986, Laws 1986, c.173, 1, eff. May 12, 1986. Those amendments made only stylistic changes to the provision of the Central Purchasing Act defining "state agency" and "agency." The Legislature's failure to change the statutory language should be regarded as acquiescence or approval of the interpretation previously given to the statute by the courts and the Attorney General. Arkansas Louisiana Gas Co. v. Travis, 682 P.2d 225
(Okla. 1984); National Cowboy Hall of Fame and Western HeritageCenter v. State ex rel. Oklahoma Human Rights Commission,579 P.2d 1276 (Okla. 1978).
¶ 6 In holding that the State Insurance Fund is a "state agency" for the purposes of the Oklahoma Central Purchasing Act, we are not unmindful of those cases where the Supreme Court has held that the Fund, in certain respects, is like a private insurance company. See e.g., State Insurance Fund v. Taron,333 P.2d 508 (Okla. 1958) (statute of limitations applies to the Fund in an action arising out of management and administration of its insurance business to same extent as to any other private insurance carriers). But it is well recognized that a public entity may be a state agency for some purposes, but not for other purposes. See e.g., State v. Grand River Dam Authority,154 P.2d 946 (Okla. 1945). The State Insurance Fund may be treated like a private carrier for certain purposes. Nevertheless, it remains a creation of the Legislature which derives its powers and authority, including those comparable to a private carrier, from legislative enactment. This was recognized by the Supreme Court in the Bone case, where the Court held that since the Fund was engaged in the insurance business at the time of an automobile accident involved therein, it was liable for damages just like a private insurance company. But the Court in that very case recognized that the fund was an "agency or instrumentality of the State." 344 P.2d at 568.
¶ 7 In our analysis of this issue, we recognize that the statutes creating the Fund confer broad powers on the Commissioner and the Board of Managers. Title 85 O.S. 132
(1987) states:
 The State Insurance Fund Commissioner is hereby vested with full power, authority and jurisdiction over the State Insurance Fund. He shall perform any duties which are necessary or convenient in the exercise of any power, authority, or jurisdiction over the fund in the administration thereof, or in connection with the insurance business to be carried on by him under the provisions of 85 O.S. 131
through 85 O.S. 151 of this title as fully and completely as a governing body of a private insurance carrier might or could do including the acquisition, operation and maintenance of an electronic data processing facility.
¶ 8 In addressing the import of this statute, our duty is to determine the intention of the Legislature, recognizing that the various portions of the enactments on a particular subject should be construed together and be given effect as a whole. Whenever it is possible to construe two statutes by giving effect to both without doing violence to either, such a construction is preferable to one that may produce a conflict between them.Grand River Dam Authority v. State, 645 P.2d 1011 (Okla. 1982).
¶ 9 Governed by this principle of statutory construction, we find no language in 85 O.S. 132 (1987) which conflicts with the detailed provisions of the Central Purchasing Act setting forth procedures for the acquisition of materials and supplies. We harmonize the two statutes at issue here by holding that while85 O.S. 132 (1987) confers upon the Commissioner broad authority to purchase materials and services deemed necessary for the operation of the Fund's insurance business, the Fund is nevertheless subject to the Central Purchasing Act as to the manner by which such items are acquired.[1]
¶ 10 Finally, we emphasize that in 74 O.S. 85.12 (1987), amended by Act of March 25, 1988, c. 81, 1988 Okla. Laws, p. 201, the Legislature specifically excluded certain state agencies from the scope of the Central Purchasing Act, including the Oklahoma Municipal Power Authority and the Grand River Dam Authority. The 1988 amendment to 74 O.S. 85.12 changed only the language of the statute which exempted from the Act certain right-of-way purchases by the Department of Transportation. That the Legislature has exempted by name certain agencies from the Central Purchasing Act, but has not included the Fund among those exempted agencies, demonstrates that the Legislature clearly intended the Fund to remain subject to the Central Purchasing Act. See, City of Duncan v. Bingham, 394 P.2d 456, 460 (Okla. 1964) (Legislature's silence, when it has authority to speak, may be considered as giving rise to an implication of legislative intent); State ex rel. Caldwell v. Oldheld, 98 P. 925 (Okla. 1908) (presumption is that Legislature does not intend to make any change in existing law, except as expressly declared).
 II.
¶ 11 Since we have answered question number one in the affirmative, the issue of whether the Fund's purchase of telephone equipment, motor vehicles, and other materials and equipment, is subject to the Central Purchasing Act must be determined by reference to the specific provisions of that Act. As discussed above, 74 O.S. 85.4 (1987) provides that all state agencies "shall acquire all contractual services, supplies,equipment, or materials . . . by the presentation of requisitions . . . to the Purchasing Division . . ." (Emphasis added). Similarly, 74 O.S. 85.5 gives the State Purchasing Director exclusive authority for "the acquisition of allmaterials, supplies, equipment and services acquired . . . by agencies of the state government." (Emphasis added).
¶ 12 Section 85.2 of the Central Purchasing Act provides the following definitions of "materials," "supplies," and "equipment."
 4. "Materials" or "supplies" includes all property except real property acquired by a state agency for its use or consumption, except equipment;
 5. "Equipment" means all personal property acquired by a state agency for its use which is in the nature of a tool, device or machine and shall be deemed to include all personal property used or consumed by a state agency and not included within the category of materials and supplies[.]
74 O.S. 85.2 (1987).
¶ 13 Given these expansive definitions, it is clear that the purchase of telephone equipment and motor vehicles is subject to the requisitions and other requirements of the Central Purchasing Act. As to the application of the Act to the acquisition of other "materials and equipment," you may wish to examine 74 O.S.85.12 (1987), as amended, to determine whether the Legislature has exempted from the scope of the Act any specific materials or equipment which the Fund plans to acquire. In the absence of such a statutory exclusion, the Act would apply.
 III.
¶ 14 Section 85.2 of the Central Purchasing Act contains the following definitions, relevant to the issue of whether the Fund is required to comply with the Central Purchasing Act in the retention of a financial advisor and fund manager.
 3. "Acquisition" includes all types of purchases and rentals, whether bought or leased by contract or otherwise, and includes every means by which a state agency obtains for its use any materials, supplies, service or equipment covered by this act, except those specifically excluded in this act;
* * *
 7. "Services" or "contractual services" includes any type of personal or professional service,
employment or undertaking, including such services as utilities, pest control, maintenance and repairs, except the employment of regular officers and employees by a state agency or such extra seasonal help as is authorized by law and irregularly used;
* * *
 10. "Professional services" means services which are predominantly mental or intellectual in character, rather than physical or manual and which do not involve the supplying of products. Professional services include those services requiring special, usually advanced education and skill.
74 O.S. 85.2 (1987) (Emphasis added).
¶ 15 When the Legislature defines terms that appear in legislative enactments, those definitions are binding in the interpretation of those sections of the statute in which those terms appear. E.g., Oliver v. City of Tulsa, 654 P.2d 607
(Okla. 1982). The Legislature is presumed to be aware of such established rules of statutory construction, and it is entitled to expect that the courts will follow these principles in interpreting its enactments. Wimberly v. Deacon, 144 P.2d 447
(Okla. 1944). Accordingly, the definitions set forth above are incorporated by reference in those specific provisions of the Central Purchasing Act which describe the obligations of agencies under the Act, including 74 O.S. 85.4 (1987) (requisitions to Purchasing Division required for acquisitions of "contractual services"); 74 O.S. 85.5 (State Purchasing Director given sole authority over "acquisition" of "services by agencies"); 74 O.S.85.7 (with certain exceptions, competitive bid procedures apply to "acquisitions").
¶ 16 The definition of "services" or "contractual services" in74 O.S. 85.2(7) specifically excludes the "employment ofregular officers and employees by a state agency." (Emphasis added). Further, since the Legislature defined "acquisition" in74 O.S. 85.2(3) to include purchases of "services," it follows that the Legislature intended to exclude, from the statutory definition of "acquisition," the acquisition of services through the employment of regular officers and employees. The statutory exception for regular officers and employees would apply even if the work performed is professional in nature, since the statute includes "professional services" within the broader definition of "services." 74 O.S. 85.2(7), 74 O.S. 85.2(10) (1987). Accordingly, we conclude that even though the Fund is a state agency for the purpose of the Central Purchasing Act, the specific requirements of the Act do not apply where the Fund obtains professional services, including those of a financial advisor and fund manager, through the employment of the Fund's regular officers and employees.
¶ 17 A different situation arises, however, if the Fund obtains the services of a financial advisor and fund manager other than through the employment of regular officers or employees. Such an acquisition would constitute an "acquisition" of "contractual services" as those terms are defined in 74 O.S. 85.2(3) and 74O.S. 85.2(7) (1987), and would also constitute an "acquisition" of "professional services" under 74 O.S. 85.2(10) (1987). Such an acquisition would fall within the scope of the requisition requirements of 74 O.S. 85.4, and would also fall within the scope of the provision vesting sole authority for acquisitions in the Purchasing Director. 74 O.S. 85.5 (1987).
¶ 18 The Fund's acquisition of the services of a financial advisor and fund manager, other than through the employment of regular officers or employees, is also subject to the competitive bidding procedures of 74 O.S. 85.7 (1987), as amended. Until 1988, 74 O.S. 85.7 stated:
 A. No acquisition or contract shall be made without the submission of competitive bids by the State Purchasing Director, except as provided in this section.
* * *
 2. Contracts for architectural, engineering, legal or other professional services as such term is defined in 18 O.S. 803 of the Oklahoma Statutes shall be exempt from competitive bidding procedures.
(Emphasis added).
¶ 19 By this language, the Legislature explicitly incorporated into 85.7(A)(2) of the Oklahoma Central Purchasing Act, the definition of "professional services" contained in 18 O.S. 803
of the Professional Corporation Act, 18 O.S. 801 (1987) et seq.18 O.S. 803, in turn, lists fifteen specific types of services in that statute's definition of "professional services." Since the services of fund managers and financial advisors are not included among the services set forth in 18 O.S. 803, it is clear that the Legislature did not intend to exempt such services from the competitive bidding requirements of 74 O.S. 85.7
(1987), as amended.
¶ 20 The 1988 amendments to the competitive bidding requirements of 74 O.S. 85.7 (1987) confirm our conclusion that the Legislature did not intend to exempt the Fund's acquisition of the services of a fund manager and investment advisor. The amended statute states:
 No acquisition or contract shall be made without the submission of competitive bids by the State Purchasing Director, except as provided in this section.
* * *
 2. Contracts for pension fund custodians, investment managers and investment consultants for state retirement systems, the pension fund management consultants of the Oklahoma State Pension Commission and actuarial, architectural, engineering, legal or other professional services as such term is defined in 18 O.S. 803 of the Oklahoma Statutes shall be exempt from competitive bidding procedures. The Office of Public Affairs shall send a copy of such contracts or a list of such contracts to any member of the House or Senate Appropriations Committee, if requested by such member.
Act of June 30, 1988, H.B. 1582, eff. July 1, 1988. (Emphasis in original, indicating changes to former law).
¶ 21 In the amended statute, the Legislature specifically excluded "investment managers and investment consultants forstate retirement systems" from the competitive bid requirements of the Central Purchasing Act. The Legislature specifically singled out for exemption the acquisition of these services by retirement systems, but left unchanged the former law as it related to the acquisition of such services by other agencies, including the Fund. The Legislature thus signified its intent to continue to subject the Fund's acquisition of the services of a fund manager and investment advisor to the competitive bid requirements of 74 O.S. 85.7. See City of Duncan v. Bingham,supra; State ex rel. Caldwell v. Oldfield, supra.
 IV.
¶ 22 We hold that the Fund is subject to the Central Purchasing Act in its acquisition of telephone equipment, motor vehicles, and other equipment, as well as the acquisition of the services of a fund manager and investment advisor (other than through the services of regular officers or employees). However, we draw your attention to certain provisions of the Central Purchasing Act which give the requisitioning agency some degree of control in the matters entrusted by that statute to the Purchasing Director. For example, 74 O.S. 85.4 (1987), provides:
 [E]very state agency shall have the authority to determine its own quantitative needs for services, supplies, equipment and materials, insofar as it has such authority under existing law and shall have the authority to determine the general class or nature of supplies, equipment, materials, or services, subject to the provisions of 74 O.S. 85.5 of this title.
¶ 23 With regard to contracts for professional services, the Act provides:
 Bids for professional service contracts that are subject to the competitive bid requirements of the Oklahoma Central Purchasing Act shall be evaluated by the State Purchasing Director and the agency contracting for such service. Both cost and technical expertise shall be considered in determining the lowest and best bid. Further, such agency shall present its evaluation and recommendation to the State Purchasing Director. A documented evaluation report containing the evaluations of the State Purchasing Director and the agency contracting for such service shall be completed prior to the awarding of a professional service contract and such report shall be a matter of public record.
74 O.S. 85.7(C) (1987), as amended, Act of June 30, 1988, H.B. 1582, eff. July 1, 1988. (Emphasis added).
¶ 24 The legal relationship between the State Insurance Fund and the Purchasing Director should properly be viewed as that of principal and agent, consistent with our holding in Attorney General Opinion No. 84-066, issued May 29, 1984. The Fund, as the requisitioning agency, has input into the decisions entrusted by statute to the Purchasing Director as the state's duly appointed purchasing agent, pursuant to the statutory provisions cited above. Further, the Purchasing Director "stands in a fiduciary relationship with any requisitioning agency," and as such "is held to a very high standard of care" in making the award of the services or materials contract in question. A.G. Opin. No. 84-066.
¶ 25 It is, therefore, the official opinion of the AttorneyGeneral that:
1. The State Insurance Fund is a "state agency" for purposes ofthe Oklahoma Central Purchasing Act, 74 O.S. 85.1 (1981) etseq., and amendments thereto, and accordingly, the Fund'sobligations relating to the acquisition of materials, supplies,services or equipment must be determined by reference to thatAct.
2. The State Insurance Fund is required to comply with theprovisions of the Central Purchasing Act in its acquisition oftelephone equipment and motor vehicles, including 74 O.S. 85.4(1987) (requisitions procedures) and 74 O.S. 85.5 (1987)(vesting authority over acquisitions in State PurchasingDirector). The acquisition of other materials and equipment isalso subject to these provisions, unless such items arespecifically excluded from the Act pursuant to 74 O.S. 85.12(1987), as amended in the Act of March 25, 1988, c. 81,1988 Okla. Laws, p. 201.
3. The Fund's acquisition of the services of a fund manager andfinancial advisor is exempt from the Central Purchasing Act ifsuch services are obtained from the Fund's regular officers andemployees, pursuant to the definitions found in 74 O.S.85.2(3), 74 O.S. 85.2(7), and 74 O.S. 85.2(10) (1987).However, if the Fund acquires such services other than from itsregular officers and employees, such acquisitions are subject tothe requirements of the Central Purchasing Act, including thecompetitive bid procedures of 74 O.S. 85.7 (1987), asamended in Act of June 30,1988, H.B. 1582, eff. July 1, 1988.
ROBERT H. HENRY ATTORNEY GENERAL OF OKLAHOMA
ROBERT A. BUTKIN ASSISTANT ATTORNEY GENERAL
[1] The specific authorization in 85 O.S.Supp. 1987, § 132[85-132]
for the purchase of an electronic data processing facility should not be construed as exempting that purchase from the requirements of the Central Purchasing Act The language authorizing the Fund to purchase a data processing facility was added to § 132 in 1982. At the time of that amendment, there was a statute, since repealed, which listed the specific state agencies which were authorized to own a data processing facility. Data Processing Planning and Management Act of 1971, 74 O.S. 1981, §§ 118.1[74-118.1] et seq., repealed by Laws 1984, c. 290, § 15, eff. July 1, 1984. The original version of that Act did not include the State Insurance Fund among the agencies authorized to own data processing facilities. Thus, the 1982 amendment to 85 O.S. §132[85-132], should be viewed as an expression of the Legislature's intent to permit the Fund to own a data processing facility, but not to exempt the Fund from the Central Purchasing Act in the acquisition of such a facility.