**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 20 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

STATE INSURANCE FUND, a
Department of the State of Oklahoma,

Plaintiff-Appellee,

v.

ACE TRANSPORTATION INC., a
corporation; DYNASTY
TRANSPORTATION INC., a
corporation; JAMES H. GLASGOW
and BILL A. BUSBICE, JR.,
individuals,

Defendants-Appellants.

No. 98-6368

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA
### (D.C. No. CV-96-1755-AR)

Submitted on the briefs:

Marc Edwards and Dionna D. Deardorff of Phillips McFall McCaffrey McVay &
Murrah, P.C., Oklahoma City, Oklahoma, for Plaintiff-Appellee.

Dale P. Martin of Lippman, Mahfouz & Martin, Morgan City, Louisiana, and
David M. Curtis of Gardere & Wynne, L.L.P., Dallas, Texas, for Defendants-
Appellants.

Before **PORFILIO** , **McKAY** , and **LUCERO** , Circuit Judges.

**McKAY** , Circuit Judge.

Plaintiff State Insurance Fund (Fund) brought this action in state court to collect unpaid worker's compensation insurance premiums from defendants. Defendants removed the action to federal court. A magistrate judge conducted a bench trial with the consent of the parties.      See 28 U.S.C. § 636(c)(1).  He awarded judgment in favor of the plaintiff from which defendants appeal.  We have jurisdiction,  [1] and we affirm in part, reverse in part, and remand for further proceedings.  [2]

---

[1]      Removal to federal court was obtained on the basis of diversity jurisdiction.  Diversity jurisdiction is available to resolve disputes between "citizens of different States."      28 U.S.C. § 1332(a)(1).  A state, or the arm or alter ego of a state, however, does not constitute a "citizen" for diversity purposes. See, e.g. , Moor v. County of Alameda    , 411 U.S. 693, 717 (1973).  We obtained supplemental briefing from the parties concerning whether the State Insurance Fund is a citizen of the State of Oklahoma.  Having reviewed the briefs and the applicable law, we conclude that the Fund is a citizen of Oklahoma for diversity purposes and that the district court had subject matter jurisdiction over this dispute.

[2]      After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.      See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

I.

The Fund is an agency of the State of Oklahoma which provides employers with insurance against liability for workers' compensation benefits. See Okla. Stat. tit. 85 § 131; State ex rel. State Ins. Fund v. Bone, 344 P.2d 562, 568 (Okla. 1959). "Independent control exists in the Fund to operate and maintain an insurance company in the same manner as may be done by any privately owned insurance company." Moran v. State ex rel. Derryberry, 534 P.2d 1282, 1286 (Okla. 1975) (quoting Bone, 344 P.2d at 568).

To set its rates, the Fund uses classifications developed by the National Council on Compensation Insurance (NCCI). The NCCI publishes a series of classification codes for various industries requiring workers' compensation coverage and provides suggested rates for each classification. The Fund's Board of Managers establishes specific rates using the suggested NCCI rates for each classification.

A covered employer pays premiums into the Fund at the beginning of a policy period according to the estimated expenditure of wages for the period. See Okla. Stat. tit. 85, § 142. The Fund assesses the premium rate to be charged based upon suggested NCCI rates for each payroll code classification and the Fund's own risk analysis. The Fund calculates the premium for the policy period based upon the Fund's rates for each classification code and the amount of the

-3-

employer's remuneration attributable to employees or contract laborers in each applicable work classification.

At the end of the policy period, the Fund conducts an audit and an adjustment of premium is made according to the employer's actual expenditure of wages. See id. If the adjusted premium is more than the employer paid at the beginning of the period, the employer is responsible for payment of any additional amount due. See id. If the amount is less, the employer receives a refund or credit. See id.

On October 1, 1991, the Fund issued Policy No. 00437880912 (Policy No. 1) to defendant Ace Transportation Inc. (Ace). Policy No. 1 covered the time period October 1, 1991 to August 1, 1992. By its terms, the policy provided that its premium would be determined by the Fund's manuals of rules, classifications, rates and rating plans. It further provided as follows:

> You will let us examine and audit all your records that relate to this policy. . . . We may conduct the audits during regular business hours during the policy period and within three years after the policy period ends. Information developed by audit will be used to determine final premium.

Appellants' App., Vol. I at 94.

On August 1, 1992, the Fund issued Policy No. 00437880921 (Policy No. 2) to Ace. Policy No. 2 contained premium provisions similar to those of Policy No. 1. At the expiration of the policies, the Fund conducted audits of both policies

-4-

and issued invoices to Ace for additional premiums under Policy No. 1 in the amount of $57,529 and under Policy No. 2 in the amount of $119,795. When Ace and the other defendants failed to pay these additional amounts, the Fund commenced this action seeking to recover additional premiums under both policies.

## II.

Following a bench trial, we review the district court's findings of fact for clear error and its conclusions of law de novo. See EEOC v. Wiltel, Inc., 81 F.3d 1508, 1513 (10th Cir. 1996). "A finding of fact is not clearly erroneous unless it is without factual support in the record, or if the appellate court, after reviewing all the evidence, is left with the definite and firm conviction that a mistake has been made." Las Vegas Ice & Cold Storage Co. v. Far West Bank, 893 F.2d 1182, 1185 (10th Cir. 1990) (quotation omitted). "[D]ue regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Fed. R. Civ. P. 52(a).

We review legal conclusions applying the same standard that the trial court would apply in making its initial ruling. See Lilly v. Fieldstone, 876 F.2d 857, 858 (10th Cir. 1989). This court is not constrained by the trial court's conclusions, but may affirm the district court on any legal ground supported by the record, see Wolfgang v. Mid-America Motorsports, Inc., 111 F.3d 1515, 1524

(10th Cir. 1997), whether or not such ground was argued in the district court, see Hernandez v. Starbuck, 69 F.3d 1089, 1093 (10th Cir. 1995).

This case requires us to construe the terms of insurance policies issued by the Fund. Oklahoma law provides the following principles for us to follow:

> An insurance policy is a contract. If the terms are unambiguous, clear and consistent, they are to be accepted in their ordinary sense and enforced to carry out the expressed intention of the parties. Whether an insurance contract is ambiguous is a matter for the court to determine as a matter of law.

Phillips v. Estate of Greenfield, 859 P.2d 1101, 1104 (Okla. 1993) (citations omitted).

"[N]either forced nor strained construction will be indulged, nor will any provision be taken out of context and narrowly focused upon to create and then construe an ambiguity so as to import a [more] favorable consideration to either party than that expressed in the contract." Dodson v. St. Paul Ins. Co., 812 P.2d 372, 376 (Okla. 1991). "The construction of an insurance policy should be a natural and reasonable one, fairly constructed to effectuate its purpose, and viewed in the light of common sense so as not to bring about an absurd result." Id. (quoting Wiley v. Travelers Ins. Co., 534 P.2d 1293, 1295 (Okla. 1974)).

III.

Defendants contend that the district court committed clear error by affirming the Fund's basis for calculating premiums pertaining to Ace's terminals 32 and 83. [3] To arrive at an amount of remuneration paid to truck drivers at these terminals for purposes of calculating premium, the Fund applied what is known as the "one-third rule." It included in the premium base one-third of the leased truck commissions, fuel surcharges and other commissions plus the entire amount of wages paid by Ace Transportation to drivers.

Defendants contend that this method of calculation involves a double counting. In evaluating this claim, we are presented with two basic issues: (1) whether the one-third rule applies in these circumstances; and (2) whether the Fund correctly applied the one-third rule in calculating the premium due. We conclude that the Fund properly applied the one-third rule, but used an improper method to calculate the basis for premiums.

---

[3] The district court does not mention this argument as it pertains to terminal 83. The parties have not supplied us with their district court briefs and so it is impossible for us to determine whether defendants raised this argument concerning terminal 83 in the district court. It is the appellant's responsibility to show where in the record an issue was raised and ruled on.      See 10th Cir. R. 28.2(C)(2). Defendants fail to comply with this requirement and so we decline to consider their argument as it relates to terminal 83. Moreover, even if we were to consider the argument, the same rationale would apply to terminal 83 as to terminal 32.

The one-third rule, contained in the NCCI manual, provides as follows:

> *Vehicles Under Contract:* If vehicles with drivers, chauffeurs or helpers are engaged under contract and the owner of such vehicles has not furnished evidence that the workers compensation obligation has been insured, the total payroll of such drivers, chauffeurs or helpers shall be included as payroll of the insured employer which contracted for such vehicles. Such payroll shall be assigned to the classification applicable in that risk to drivers. If that payroll cannot be obtained, 1/3 of the total contract price for the vehicles shall be considered as payroll of the drivers, chauffeurs or helpers. <u>If the owner of a vehicle under contract also is a driver and is entitled to workers compensation benefits and has not furnished evidence that such workers compensation obligation has been insured, 1/3 of the contract price for that vehicle shall be included as payroll of the insured employer which contracted for the vehicle.</u>

Appellant's App. Vol. I at 176 (emphasis added).

Ron Cook, witness for the Fund, testified that the Fund adopted the one-third rule because of its concern that trucking companies were taking advantage of owner/operator arrangements. An owner/operator both owns and drives his truck. Oklahoma's worker's compensation system does not consider owner/operators "employees" subject to worker's compensation premiums. <u>See</u> Okla. Stat. tit. 85 § 3(6) (Supp. 1999). An owner/operator may self-insure, however. <u>See</u> <u>id.</u>

Before the Fund adopted the one-third rule, Ace manipulated the hiring of owner/operators to reduce its premiums. A driver who wished to hire himself and his truck to Ace would hire on as an employee for a related trucking firm called

Total, then drive for Ace as a Total driver. Since the owner/operator was now an employee, Total was obligated to insure him. Total and Ace worked together, however, to present only a minuscule amount of the driver's compensation as "payroll."

They did this by cutting two checks to the driver–one as lease payment for his truck from Ace (accompanied by an IRS form 1099), and the other as wages from Total (accompanied by a form W-2). Ace and Total would decide what percentage of the total payment would be shown as wages and what percentage as lease of the truck. This allowed Total to allocate a tiny amount as wages and to pay a reduced premium to the Fund. The driver also benefitted, because instead of having either to insure himself as an owner/operator or to go without workers' compensation insurance, he now received insurance through his "employer," Total.

The Fund contends that the one-third rule must be applied here to avoid a similar scheme. The record contains evidence Ace hired drivers as employees and split their salary between "lease driver expense" (part of the contract price) and "Ace driver expense" (paid by Ace as salary), resulting in an artificially low driver salary to be used as wage base. The Fund was concerned that some of these drivers were owner/operators and that Ace was reproducing the old "Total" scheme.

Defendants claim, however, that drivers at terminal 32 were paid under what they call a "lease arrangement" system. Under the lease arrangement system, the truck owner provides the truck, but Ace provides the driver. Ace pays the truck owner a fee to lease the truck and the driver a salary. Defendants contend that, under this system, the driver's salary should be used to compute the worker's compensation premium, and the remaining sum paid under the contract should be ignored.

The Fund responds that Ace failed to supply documentation sufficient to establish that its drivers were paid under the lease arrangement system which it described, and were not owner/operators. The Fund places the burden on employers to establish that their drivers are not owner/operators hired as employees who properly fall within the one-third rule. To protect itself, the Fund insisted on documentation such as the lease agreement, the vehicle registration, commercial driver's license and proof of liability insurance as part of its auditing process. Defendants failed to provide this documentation.

The defendants argue that the only information which they are obligated to provide the Fund to avoid application of the one-third rule is payroll information. We are not persuaded. Admittedly, the NCCI manual allows employers to use total payroll as the premium basis for "drivers, chauffeurs and helpers engaged under contract" by the owner of a truck unless their "payroll cannot be obtained"

from the truck owner. Appellants' App. Vol. I at 176. However, the express terms of the manual go on to provide that the Fund shall apply the one-third rule to any "owner of a vehicle under contract" who it hires as a driver.      Id. There is no provision in the latter instance for using the driver's payroll rather than one-third of the contract price. The Fund therefore permissibly requires audit information above and beyond the driver payroll to establish that a driver is not an owner/operator hired as an employee.

The defendants further argue that the Fund's entire approach is wrong because owner/operators are not "employees" subject to workers' compensation premiums by their employer under Oklahoma law. Ron Cook testified, however, that the Fund considers owner/operators who hire on as drivers to be employees subject to the workers' compensation laws. Such owner/operators no longer operate as independent contractors, and the statutory rationale for excluding them from coverage is no longer present. Moreover, the one-third rule clearly anticipates that owners of vehicles under contract who are also drivers may be "entitled to workers compensation benefits."      Id. The defendants have not argued that this provision of the one-third rule contravenes the exclusion from workers' compensation for owner/operators found in Okla. Stat. tit. 85 § 3(6), and we will not make such an argument for them.

The defendants were required, under the policy terms, to provide sufficient audit documentation to substantiate their claim that the drivers at terminal 32 were not owner/operators hired on as employees and therefore subject to the one-third rule. Given their failure to supply such documentation, the Fund properly applied the one-third rule in this case.

B.

We turn to calculation of the premium basis under the one-third rule. The Fund determined that the appropriate method for calculating the premium was to include the full amount of the driver's entire wages (Ace driver wages) plus one-third of the truck commissions. See id. Vol. II at 314. This results in a higher premium base than simply taking one-third of the contract price. The Fund's representative was questioned about this practice at length, see id. at 337-40, and failed to provide any justification for it:

> THE COURT: Okay, but again, I hate to keep beating a dead horse. You are taking the one-third, but you are adding the wages to that.
>
> THE WITNESS: Yes, but what you have to understand [is] we didn't add it twice. Look at it this way. Look at it as a commission. . . . This is not coming out of anything of Ace's . . . the best I can determine on what they have provided us.
>
> So they are saying the driver gets $5, and the truck commission was $50. Well, when they get a work comp claim and they go to the

-12-

Industrial Court, the Court isn't going to figure wages on $5. They are going to want to know what the individual earned. . . .

What they have done is they have paid $5, but they have taken it out of his 75 percent already. It's separate. Then when we take one-third of the truck commissions, that is not 75 percent any more. It's only 52 percent.

Appellant's App., Vol. II at 339-40.

In upholding the Fund's calculation, the district court reasoned as follows:

Furthermore, the Court finds that the Fund did not "double count" premiums for terminal 32 by including both 1/3 of the leased truck commissions, fuel surcharges and other commissions and drivers wages in the premium calculation. This is true because the driver's wages had been subtracted from the total commission for that terminal, and by adding those figures together, you arrive at the total contract price.

Id. Vol. I at 58.

While it is true, as the district court noted, that adding the driver's wages to the amount of commission would allow one to arrive with the total contract price, which should then be divided by three, that is not what the Fund did. Instead, the Fund took *the entire amount* of driver's wages then added one-third of everything else in the contract price. The Fund does not point to any justification for this approach in either the policy or the NCCI manual. This approach results in an amount which exceeds one-third of the contract price, which is the proper basis

for calculating premiums. [4] For this reason, we must reverse and remand for recalculation by the district court.

## IV.

Defendants next argue that the district court erred in affirming the Fund's action which classified the wages of Ace Transportation's terminal managers under code classification 7219 rather than 8742. Code classification 7219 is the classification applicable to truck drivers, and it applies to persons whose duties include some truck driving. The district court noted that the Fund discovered during a 1990 audit that terminal managers were involved in some truck driving operations when they gave road tests. It found that the defendants failed to provide the Fund with evidence to support their claim that terminal managers no longer participated in road testing. The district court correctly decided the second issue against the defendants because they failed to provide adequate documentation to support their position during the audit.

---

[4] The actual figures were as follows. For Policy No. 1, the Fund applied the one-third rule to leased truck commissions, fuel surcharges and other commissions in the amount of $175,201.03 (one-third of $525,603.09). It then added $112,552.88 to this amount for Ace driver wages, to arrive at a total premium base of $287,753.31. For Policy No. 2, the Fund arrived at a one-third figure of $100,533, to which it added Ace driver expenses of $134,033 to reach a total of $234,566.

Finally, defendants assert that the district court improperly affirmed the Fund's action in including within the basis for computing premiums leased truck commissions paid to William Pursely, an owner/operator. As mentioned, an employer need not cover the owner/operators who drive the trucks they own on a contract basis for his company. The defendants contended before the district court that numerous drivers were owner/operators. On appeal, they limit their argument to the case of William Pursely.

Ron Cook, the Fund's witness, testified that in order to establish whether a driver should be excluded from the premium basis as an owner/operator, the Fund requests

> their vehicle registration, commercial driver's license, their liability policy, and of course, we would like to get their lease agreement, and maybe a statement from that owner-operator that he is the only one driving that truck. We don't always get it, but we do like to get those.

Appellant's App., Vol. II at 253.

The record contains a letter from Michelle McDonald, Premium Auditor, in which she states that the Fund received a registration from William Pursely but did not have data to indicate the amount of the gross line haul which he received. See id. Vol. I at 161. At the trial, a witness for Ace supplied the missing

information.  He stated that the amount of leased truck commissions paid to Pursely was $33,080.05.    See id. Vol. II at 395.

The district court affirmed the Fund's decision not to exclude Pursely and the other alleged owner/operators.  Its reasoning, however, has nothing to do with Pursely and does not support denial of owner/operator status to him.  The district court stated:

> [W]hen [defendants' witness] was asked if he could point to any documents in the record which would support his contention that those persons were true owner-operators, he responded that he could not.

Id. Vol. I at 64.

The misleading part of this statement is that when it is read in context, "those persons" referred to include only drivers Taylor, Miller and Lamb.    See id. Vol. II at 425.  The Fund had implicitly stated, in a letter which appears in the record, that it had what it needed to show that Pursely was an owner/operator, except for the amount of gross line haul which he received.  That information was supplied at trial.

It may be that defendants presented insufficient evidence to support considering Pursely an owner/operator.  From the limited amount of the record which we have before us, it is not possible conclusively to determine this question.  The Fund's letter suggests, however, that it had what it needed as to Pursely, except for additional information which was supplied at trial.  The

district court is in the best position to reconsider all the evidence and to make a new finding on remand as to this issue.

The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings in light of this opinion.