OSCN Found Document:TULSA STOCKYARDS, INC. v. CLARK

 
 
 
 OSCN navigation


 
 Home

 
 Courts

 
 Court Dockets

 
 Legal Research

 
 Calendar

 
 Help
 





 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 

 
 
 
 TULSA STOCKYARDS, INC. v. CLARK
2014 OK 14
Case Number: 112240
Decided: 03/11/2014
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2014 OK 14, __ P.3d __

TULSA STOCKYARDS, INC., Petitioner,
v.
JASON CLARK, AS PRESIDENT AND CHIEF EXECUTIVE OFFICER OF COMPSOURCE OKLAHOMA, Respondent.

ORIGINAL PROCEEDING FOR DECLARATORY RELIEF
AND WRIT OF PROHIBITION OR MANDAMUS

¶0 In this original proceeding, petitioner seeks declaratory relief and an extraordinary writ. Petitioner challenges the CompSource Mutual Insurance Company Act, 2013 Okla. Sess. Laws, ch. 254 (codified at 85 O.S.Supp.2013, §§ 375.1 et seq.), as being contrary to the Oklahoma Constitution, Article X, § 15(A) (prohibiting gifts of public money), Article II, § 15 (prohibiting interference with contracts), and Article V, § 55 (prohibiting money being paid out of the State Treasury except by appropriation). The challenged legislation requires that CompSource Oklahoma be restructured to do business as a domestic mutual insurer under the name of CompSource Mutual Insurance Company effective January 1, 2015, and vests all of CompSource Oklahoma's assets in CompSource Mutual Insurance Company. We previously assumed original jurisdiction.

EXTRAORDINARY WRIT DENIED.

R. Stratton Taylor and Mark H. Ramsey, Claremore, OK, for petitioner;
Robert G. McCampbell, Klint A. Cowan, and Travis V. Jett, Oklahoma City, OK, for respondent;
Patrick R. Wyrick, Solicitor General, and Cara N. Rodriguez, Assistant Solicitor General, Oklahoma City, OK, for the Oklahoma Attorney General;
Sam Fulkerson and Elizabeth Bowersox, Oklahoma City, OK, for the State Chamber of Commerce, amicus curiae.

TAYLOR, J.

¶1 In this original proceeding, Tulsa Stockyards, Inc. (petitioner) challenges the constitutionality of the CompSource Mutual Insurance Company Act (Act), 2013 Okla. Sess. Laws, ch. 254 (codified at 85 O.S.Supp.2013, §§ 375.1 et seq.). The Act requires that CompSource Oklahoma (CompSource) be restructured to do business as a domestic mutual insurer without capital stock or shares under the name of CompSource Mutual Insurance Company (CompSource Mutual) effective January 1, 2015. Petitioner contends that CompSource is a state agency and its money and other assets, valued at approximately Two Hundred Sixty-five Million Dollars ($265,000,000.00), are assets of the people of Oklahoma. It contends that converting CompSource from a department of this State to an independent, licensed mutual insurance company without provision for the State to retain ownership of CompSource's assets is contrary to the prohibition against gifts of public money, Okla. Const., art. X, § 15(A); the prohibition against interference with contracts, Okla. Const., art. II, § 15; and the prohibition against money being paid out of the State Treasury except by appropriation, Okla. Const., art. V, § 55.[1] CompSource responds that its money and other assets belong to its insured employers and their employees and that its money is not State money under Moran v. State ex rel. Derryberry, 1975 OK 69, 534 P.2d 1282.

¶2 We assumed original jurisdiction to revisit the nature and ownership of CompSource's money and other assets, to consider the continued efficacy of our Moran opinion, and to determine whether our constitution prohibits the Oklahoma Legislature from transferring CompSource's money and other assets to a domestic mutual insurer. We conclude that CompSource's money and other assets are held in trust for the benefit of the employers and employees protected by the insurance issued by CompSource, our Moran opinion remains sound law, and the Oklahoma Constitution does not prohibit the Legislature from placing CompSource's money and other assets in trust with a domestic mutual insurer.

I. COMPSOURCE OKLAHOMA
SUCCESSOR TO THE STATE INSURANCE FUND

¶3 The Oklahoma Legislature created the State Insurance Fund (Fund) in 1933 to provide workmen's compensation insurance to public employers and to private employers who were unable to secure insurance from private insurers. 1933 Okla. Sess. Laws, ch. 28 (most recently codified at 85 O.S.1991, § 131, et seq.). The Legislature established the Fund as a revolving fund[2] in the State Treasury that consisted of any specific appropriation[3] made to it, all insurance premiums received, and all property, securities, and interest acquired through the use of the money in the revolving fund. 1933 Okla. Sess. Laws, ch. 28, art. 2, § 1(a) (amended by 1937 Okla. Sess. Laws, ch. 72, art. 3, § 3(a) and codified at 85 O.S.1941, § 131(a)). The Legislature directed that the Fund's money shall be applicable to the payment of losses sustained on account of the insurance contracts issued by the Fund and to the payment of expenses to administer the Fund. 1933 Okla. Sess. Laws, ch. 28, art. 2, § 1(b) (amended by 1937 Okla. Sess. Laws, ch. 72, art. 3, § 3(b) and codified at 85 O.S.1941, § 131(b)). The Legislature made the State Treasurer the custodian of all monies in the Fund and required a separate bond from the State Treasurer for the faithful performance of the duties of custodian of the Fund. 1933 Okla. Sess. Laws, ch. 28, art. 2, § 5 (codified at 85 O.S.1941, § 135).

¶4 From its inception, state officials controlled the Fund expressly without liability on the part of the state beyond the money in the revolving fund. 1933 Okla. Sess. Laws, ch. 28, art. 2, § 1(a) (amended by 1937 Okla. Sess. Laws, ch. 72, art. 3, § 3(a) and codified at 85 O.S.1941, § 131(a)). Initially, the State Industrial Commission administered the Fund. 1933 Okla. Sess. Laws, ch. 28, art. 2, § 2. In 1937, the Legislature created a Board of Managers to supervise the operation of the Fund and authorized the Board of Managers to appoint a State Insurance Fund Commissioner to administer the Fund. 1937 Okla. Sess. Laws, ch. 72, art. 3, §§ 1 and 2 (codified at 85 O.S.1941, §§ 131a and 131b). The five members of the Board of Managers were the Governor, the Chairman of the State Industrial Commission, the Secretary of the State Insurance Board, the Insurance Commissioner, and the State Highway Commissioner.[4] Id. § 131a. The Legislature authorized the Board of Managers to fix the premium rates to be charged by the Fund for insurance. 1937 Okla. Sess. Laws, ch. 72, art. 3, § 4 (codified at 85 O.S.1941, § 132). The Legislature authorized the State Insurance Fund Commissioner to conduct the insurance business as a private carrier might do, id., but limited the Commissioner's power to refuse to issue insurance. 85 O.S. 1941, § 134(2) (currently codified at 85 O.S. 2011, § 382(A)(2)). The Legislature also authorized the Commissioner to sue and be sued, to make and enter into contracts of insurance, and to invest and reinvest monies belonging to the Fund. 1937 Okla. Sess. Laws, ch. 72, art. 3, § 5 (codified at 85 O.S.1941, § 133). The Legislature expressly directed that the Fund shall be fairly competitive with other insurance carriers and that the Fund shall become neither more nor less than self-supporting. 1933 Okla. Sess. Laws, ch. 28, art. 2, § 1(c) (amended by 1937 Okla. Sess. Laws, ch. 72, art. 3, § 3(c) and codified at 85 O.S.1941, § 131(c)).

¶5 The purpose of the Fund and the duties, responsibilities, and restrictions imposed upon the Commissioner, now the President and Chief Executive Officer,[5] and the Board of Managers were prescribed in the 1941 codification of the workers' compensation statutes. Even though the statutes have since been amended many times, the substance of the 1941 codification has remained the same. Importantly, the legislative application of the money in the Fund to the payment of losses sustained on account of the insurance policies and to the payment of expenses to administer the Fund has remained the same. 85 O.S.1941, §§ 131(b) and 139 (currently codified at 85 O.S.2011, §§ 375 and 389). In 2001, the Legislature amended §§ 131, 131a and 131b to change the Fund's name to CompSource Oklahoma. 2001 Okla. Sess. Laws, ch. 378, §1. In renaming the Fund, the Legislature made no changes to the operation and management of and expenditures from the revolving fund. The most recent codification of the CompSource statutes is 85 O.S.2011, §§ 375 - 401. In section 53 of the challenged Act, the Legislature has directed the repeal of 85 O.S.2011, §§ 375 - 401, with exceptions.[6] 2013 Okla. Sess. Laws, ch. 254, § 53. Section 53 will not be effective until January 1, 2015. Id. § 55.

¶6 Our early jurisprudence recognized that the Fund, a statutory creature engaged in the insurance business under the control of state officials, was a department of the State engaged in a private enterprise to fulfill a public need for workers' compensation insurance. In O.K. Constr. Co. v. Burwell, 1939 OK 248, 93 P.2d 1092, the Fund appealed an award of the State Industrial Commission but did not post an appeal bond. The Court viewed the Fund as a department of the State and did not require an appeal bond.

It is observed that no legislative, judicial, or governmental functions are authorized by the terms of the act, but the powers granted are administrative in character and may be terminated at any time at the will of the Legislature. The powers and duties are exercised by elected and appointed state officers who perform said functions without added compensation. We are not here dealing with an independent corporate entity or a governmental agency created by law and vested with a measure of governmental power, but a mere department created for a fixed and limited purpose, over which the state, through its Legislature and its officials, retains absolute domination and control. The State Insurance Fund, therefore, is a department of the state of Oklahoma within the meaning of that term as used in section 514, supra, and is not required to give an appeal bond.

Id. at ¶10, 93 P.2d at 1094.

¶7 However in deciding whether the statute of limitations ran against the Fund in a contract action, the Court viewed the Fund as a private insurer. State Ins. Fund v. Taron, 1958 OK 282, 333 P.2d 508. The Taron Court ruled that the Fund's suit for indemnity arose "out of the management and administration of its insurance business" and the "statutes of limitations therefore apply to it to the same extent as to any other private insurance carrier." Id. at ¶15, 333 P.2d at 513.

¶8 The Court extended tort sovereign immunity to the Fund in State v. District Court of Oklahoma County, 1954 OK 171, 278 P.2d 841, a suit filed against the Fund for damages resulting from an automobile accident. The Court recognized that the Fund was created for the specific purposes of protecting employers against the workmen's compensation liability and of paying injured employees the compensation due them and reasoned that allowing "the Fund to be sued in tort would be to take the money specifically set aside to pay injured workmen" which could easily bankrupt the Fund. Id. at ¶10, 278 P.2d at 843. Short-lived, the District Court of Oklahoma County opinion was overruled in State v. Bone, 1959 OK 135, 344 P.2d 562, 563: Syllabus by the Court, No. 1:

1. The legislature of this state, by the enactment of 85 O.S.1951, Section 133 [sue and be sued provision], waived the sovereign immunity of the State Insurance Fund from all suits arising out of any act, deed, matter or things made, omitted, entered into, done or suffered in connection with the State Insurance Fund in the administration and management of the business and affairs of said Fund; and, the Fund, while engaged in the insurance business, a purely business enterprise, as distinguished from a mandatory duty or governmental function, assumes the obligations and liabilities incident to the business the same as when carried on by private corporations or individuals, including actions for damages caused by one of their employee's negligence in driving his car while on a mission for the Fund. In applying this rule, we overrule State ex rel. State Ins. Fund v. District Court of Oklahoma County, Okl., 278 P.2d 841, in so far as it conflicts with our holding herein.

¶9 After Bone, this Court did not extend sovereign immunity to the Fund until we determined that the definition of "agency" in the Governmental Tort Claims Act, 51 O.S.1991, §§ 151, et seq., included the Fund and superceded the Bone pronouncement. Fehring v. State Ins. Fund, 2001 OK 11, 19 P.3d 276. Recognizing the governmental entity/private enterprise characteristics of the Fund (SIF), Fehring explained:

Further, although State ex rel. State Insurance Fund v. Bone, 1959 OK 135, 344 P.2d 562 held - prior to the GTCA's enactment - that SIF was not within the traditional immunity afforded the sovereign because it was an agency or instrumentality of the State engaged in a business enterprise, as distinguished from a purely governmental function, Bone was decided when a distinction was made between governmental and proprietary functions of governmental entities for sovereign immunity purposes. See Vanderpool v. State, 1983 OK 82, 672 P.2d 1153 (general discussion of governmental/proprietary function issue) and Hershel v. University Hospital Foundation, 1980 OK 60, 610 P.2d 237, 242 (recognizing the Court's treatment of SIF in Bone involved a holding that SIF was a State enterprise engaged in a proprietary function not entitled to sovereign immunity). The previous distinction existing in sovereign immunity law by virtue of a State entity being engaged in a proprietary function - rather than a governmental one - no longer applies because, under 51 O.S. 1991, § 166, the GTCA's provisions are applicable to both governmental and proprietary functions of State entities within its sphere.

Id. at ¶21, 19 P.3d at 282-283 (footnote omitted).

¶10 The general purpose of the Fund, now CompSource, is to insure employers against liability for workers' compensation claims and to assure employees entitled to benefits under our workers' compensation laws receive such benefits through the insurance. The Fund was and is an insurer of last resort for those employers unable to obtain insurance from a private insurer. From its beginning, the Fund has been recognized as a nonprofit department engaged in the private insurance business under the control of state officials to fulfill a public need for workers' compensation insurance.

II. MORAN V. STATE EX REL. DERRYBERRY
1975 OK 69, 534 P.2d 1282. 

¶11 In 1974, the Oklahoma Legislature directed the State Insurance Fund Commissioner to liquidate assets and deposit surplus money in the amount of Four Million Dollars in the Fund to be appropriated by the Legislature. 1974 Okla. Sess. Laws, ch. 209, §§ 1 and 2 (codified at 85 O.S.Supp.1974, §§ 152 and 153). The 1974 appropriation to the State Board of Education included an appropriation of Four Million Dollars from the Fund. 1974 Okla. Sess. Laws, ch. 234, § 4. John C. Moran and other employers insured by the Fund sued to enjoin the liquidation of the Fund's assets. The district court declared both legislative acts to be unconstitutional and enjoined the State Insurance Fund Commissioner and the Board of Managers of the Fund from liquidating the assets. The Oklahoma Attorney General appealed. In affirming the district court's declaratory judgment, this Court examined the legal status of the Fund and the legal status of the money and other assets of the Fund. Moran v. State ex rel. Derryberry, 1975 OK 69, 534 P.2d 1282.

¶12 As to the legal status of the Fund, first the Moran opinion considered the statutes creating the Fund:

Title 85 O.S. 1971 § 131, provides that the Fund shall be administered "without liability on the part of the State beyond the amount of said Fund" . . .; that it shall be a Revolving Fund consisting of premiums received, all property and securities acquired through use of its moneys, and all interest earned upon its moneys; and that "Said Fund shall be fairly competitive with other insurance carriers and it is the intent of the Legislature that said Fund shall become neither more nor less than self-supporting."

Id. at ¶13, 534 P.2d at 1284. Secondly, the Moran opinion considered the extant jurisprudence and in particular, the Bone opinion:

In State v. Bone, Okl., 344 P.2d 562, we held the State Insurance Fund, as an agency or instrumentality of the State, did not have the immunity of the State from suit, and could be sued and held liable for damages because of negligence of its employee in operating a motor vehicle. Therein we stated at page 568:

"* * * * Under no circumstances can the general funds of the State be reached in order to satisfy an obligation of the Fund. Independent control exists in the Fund to operate and maintain an insurance company in the same manner as may be done by any privately owned insurance company. These factors permit it (the Fund) to be regarded as an independent business enterprise or entity."

And on page 569:

"* * * * we now hold that the State Insurance Fund is a business enterprise as distinguished from purely governmental activities, and tort liability attaches and may be adjudicated pursuant to the consent statute, Sec. 133, 85 O.S. 1951, supra. In creating and undertaking the operation of the State Insurance Fund, it is reasonable to think that the same responsibilities were intended to be assumed as ordinary insurance companies are obliged to assume."

Id. at ¶24, 534 P.2d at 1286.

¶13 Guided by the Bone opinion, Moran concluded that the Fund is a non-profit and non-loss insurer and that the State may not profit from the Fund:

These statements [in Bone] i.e., "Independent Control," and "operate and maintain in the same manner as privately owned insurance company," and "independent business," and "a business enterprise as distinguished from purely governmental activities," when joined with the legislative injunction "that said Fund shall become neither more nor less than self-supporting" (§ 131, supra), compel the conclusion that the Legislature did not intend for the State to gain a pecuniary profit from the operation, nor to gain by reason of an unexpected "windfall" in the nature of an alleged surplus or excess reserve, at the expense of the premium-paying employers or the employee beneficiaries, in a declared non-profit and non-loss insurance activity. That such is the clear majority view is shown by the authorities and decisions.

There is no question that should the State Insurance Fund become insolvent or fail to pay a workmen's compensation award, the employers insured by the Fund would be called upon to pay the award according to its terms. Atlas Wiring Co. v. Dorchester, 168 Okl. 337, 32 P.2d 913, and Rucks-Brandt Const. Corporation v. Silver, 194 Okl. 324, 151 P.2d 399. It is plain the insured employer is interested in seeing the Fund maintains reserves sufficient to pay any claims. It is also clear the employees of such employer have an interest in the maintenance of the reserves.

Id. at ¶¶25 and 26, 534 P.2d at 1286.

¶14 As to the legal status of the money in the revolving fund, the Moran Court turned to the plain meaning of the language in 85 O.S.1971, § 131(b) that the "Fund shall be applicable to the payment of losses sustained on account of insurance and to the payment of expenses in the manner provided in this Act." Id. at ¶32, 534 P.2d at 1287. The Moran Court concluded that the Fund's monies are held in trust for the policy-holding employers and their employees:

It is our conclusion the funds of the State Insurance Fund are not State funds and do not belong to the State, that such funds are trust funds for the benefit of employers and employees, and are not available for the general or other purposes of the State, nor are they subject to appropriation by the Legislature for purposes other than those contemplated by the State Insurance Fund Act.

Id. at ¶34, 534 P.2d at 1288.

¶15 The Moran Court ruled that the challenged legislation interfered with the Fund's insurance contracts:

In Baker v. Tulsa Building & Loan Ass'n, 179 Okl. 432, 66 P.2d 45, 46, we stated the well established rule of law as follows:

"The existing statutes and the settled law of the land at the time a contract is made become a part of it and must be read into it."

Therein we further stated:

"A `vested right' is the power to do certain actions or possess certain things lawfully, and is substantially a property right, and may be created either by common law, by statute, or by contract. And when it has once been created, and has become absolute, it is protected from the invasion of the Legislature by those provisions in the Constitution which apply to such rights."

Article 2, § 15, Constitution of Oklahoma, provides that no law impairing the obligation of contracts shall ever be passed.

The 1974 legislative laws, 85 O.S.Supp. 1974 §§ 152 , 153 , and § 4 of Senate Bill 434, Session Laws 1974, do impair the insurance contracts and rights of Appellees thereunder, and are unconstitutional and void.

Id. at ¶¶37-39, 534 P.2d at 1288.

¶16 The Moran opinion has been often accepted as authority. This Court followed Moran in deciding that the Fund (SIF) was protected by the Governmental Tort Claims Act:

SIF's purpose, powers, duties and structure are primarily set out in 85 O.S. 1991, § 131 et seq., as amended - part of our workers' compensation laws. It was created by 1933 legislation [O. K. Constr. Co. v. Burwell, 1939 OK 248, 93 P.2d 1092, 1093] to satisfy the need for workers' compensation insurance for employers unable to procure coverage from private insurance companies and in high risk industries. Moran v. State ex rel. Derryberry, 1975 OK 69, 534 P.2d 1282, 1284. Today, SIF's general purpose is simply to insure employers against liability for workers' compensation claims and to assure employees entitled to benefits under our workers compensation laws that they receive such benefits through the insurance. 85 O.S. Supp. 1995, § 131. SIF provides such insurance to both private and public employers. Also, SIF's governing statutes plainly indicate, although it is to be fairly competitive with private insurance carriers providing such insurance, SIF is generally a non-profit endeavor [§ 131(c)], and its ability to decline to insure an employer for purposes of the employer's workers' compensation liability is restricted. 85 O.S. Supp. 1996, § 134(A)(2).

Fehring v. State Ins. Fund, 2001 OK 11 at ¶11, 19 P.3d at 280 (footnote omitted).

¶17 In deciding the Fund was an agency under the Governmental Tort Claims Act, Fehring recognized that the State Insurance Fund Commissioner is a state officer, citing 74 O.S.Supp.1994, § 85.29; the Fund's personnel are under the Merit System of Personnel Administration, citing 74 O.S.Supp.1994, § 840-5.10; and supervision of the Fund is conducted by state officers or their appointees on the Board of Managers. Even so, Fehring did not disturb the Moran conclusion that the Fund's monies are trust funds:

Although this Court has recognized that generally the funds of SIF are not State funds, but are trust funds held for the benefit of the employers/employees protected by the insurance issued by SIF to provide coverage in conformity with our workers' compensation laws [Moran v. State ex rel. Derryberry, supra], the Court has, nonetheless, unequivocally held SIF is a department of the State, over which the State, through legislative enactment, wields absolute control of its functions, powers and duties. O. K. Constr. Co. v. Burwell, supra, 93 P.2d at 1094. . . .

2001 OK 11 at ¶17, 19 P.3d at 281 (footnote omitted).

¶18 This Court relied on Moran in deciding that the funds in the Petroleum Storage Tank Release Indemnity Fund belong to the State of Oklahoma.[7] State ex rel. Wright v. Okla. Corporation Comm'n, 2007 OK 73, 170 P.3d 1024. The Oklahoma Court of Criminal Appeals relied on Moran in deciding that the Fund's monies are not public funds for purposes of criminal prosecution for making false claims against the State. State v. Young, 1999 OK CR 14, 989 P.2d 949. The Oklahoma Attorney General relied on Moran in its opinion that the Fund's monies are not public funds for purposes of the prohibition against an officer receiving benefit from the use of public funds in Art. X, § 11, Okla. Const. 2011 OK AG 14.

¶19 Oklahoma law is clear that CompSource and its predecessor were created to conduct insurance business for employers as a private carrier might do so as to be fairly competitive with private insurance carriers and to be nothing more than self-supporting. Oklahoma law is also clear that CompSource's monies were and are generated from the sale of workers' compensation insurance in accordance with the workers' compensation statutes and from the investment of such money and that CompSource's monies are held in trust for the benefit of the employers and employees protected by the insurance issued by CompSource. The monies in the revolving fund of the Fund and CompSource have not been assigned the legal status of State funds even though the Fund and CompSource have been assigned the legal status of State entities controlled by state officials.

¶20 Zaloudek Grain Co. v. CompSource Oklahoma, 2012 OK 75, ¶¶13 and 14, 298 P.3d 520, 525, recognized this paradox. In addressing the issue of whether CompSource was subject to the requirements in 36 O.S.2001, § 3639 when it canceled its workers' compensation policy, Zaloudek revisited the 1933 legislation and early jurisprudence and made the following observations:

The State Insurance Fund (Fund) was created in 1933. CompSource is the successor to the Fund. The Fund was created to be a "revolving fund" for the purpose of insuring employers against liability for compensation under Oklahoma's workers' compensation laws. CompSource has been described by this Court as not being "an independent corporate entity or a governmental agency created by law and vested with a measure of governmental power, but a mere department created for a fixed and limited purpose, over which the state, through its Legislature and its officials, retains absolute domination and control." CompSource's employees are state employees and the President and Chief Executive Officer's salary is set by statute. It is a state department created for the purpose of insuring employers against liability for compensation pursuant to the Workers' Compensation Code and is required to be "fairly competitive with other insurance carriers." It is not an incorporated stock insurer, an incorporated mutual insurer, a mutual benefit association, a nonprofit hospital service and medical indemnity corporation, a farmers mutual fire insurance association, a Lloyd's association nor a reciprocal insurer.

The Fund/CompSource has been in existence for almost eighty years and yet the legislature has not added it to the list of entities in the Insurance Code's general definition of "insurer." . . .

2012 OK 75 at ¶¶13 and 14, 298 P.3d at 525 (footnote omitted).

¶21 Petitioner contends that in the nearly four decades after Moran, the law has changed to recognize the Fund/CompSource's sovereign immunity, to make the Fund/CompSource accountable under the merit system of personnel, to delegate to the Fund/CompSource responsibility for the Multiple Injury Trust Fund, and to expend state funds for the Fund/CompSource's surety bonds. These changes, however, do not alter the nature of the money and assets held in trust for the employers insured by CompSource and their employees. Having revisited the nature and ownership of CompSource's money, we find our Moran opinion remains sound. Moran is controlling precedent on the issue of the legal status of the Fund/CompSource as a department created by state statute for the purpose of insuring employers against liability for compensation pursuant to the workers' compensation law and the legal status of the Fund/CompSource's money as trust funds for the benefit of the insured employers and employees. Accordingly, we reaffirm Moran's conclusions that the monies and other assets of the State Insurance Fund, now CompSource, are not State funds and do not belong to the State and that those monies and other assets are held in trust for the benefit of the insured employers and employees.

III. THE COMPSOURCE MUTUAL INSURANCE COMPANY ACT
2013 OKLA. SESS. LAWS, CH. 254

¶22 The challenged Act, CompSource Mutual Insurance Company Act, 2013 Okla. Sess. Laws, ch. 254 (codified at 85 O.S.Supp.2013, §§ 375.1 et seq.), mandates that CompSource transition to a domestic mutual insurer, CompSource Mutual Insurance Company, effective January 1, 2015. The Act requires the Insurance Commissioner to approve articles of incorporation for CompSource Mutual and to issue a certificate of authority not later than August 1, 2014, the certificate to become effective January 1, 2015. Id. § 375.3(A). Subsection 375.3(B) requires CompSource Mutual to be a financially independent, nonprofit corporation providing competitively-priced workers' compensation and related coverages for the benefit of Oklahoma citizens. Subsections 375.3(E), (F), and (G) require CompSource Mutual to be an insurance carrier under the Workers' Compensation Code and Title 36 of the Oklahoma Statutes with some exceptions for a period of three years. Subsection 375.3(H) provides that CompSource Mutual shall not be considered a state agency, public body, department, or public trust within the Executive Branch of State Government.[8] Subsection 375.3(I) states that CompSource Mutual:

1. Shall be organized and operated under Oklahoma law, but be independent of the State of Oklahoma;
2. Shall provide workers' compensation insurance to any employer in Oklahoma which seeks such insurance and meets other reasonable requirements relating thereto;
3. Shall not be permitted to dissolve; and
4. Shall have a majority of the Board of Directors or oversight body of such organization appointed by the Governor or legislative officers as specified in Section 4 of this act.

¶23 CompSource Mutual's Board of Directors shall have supervision over the administration and operation of CompSource Mutual, id. § 375.6, and shall have full power to set actuarially sound rates to be charged for insurance for a period of three years. Id. § 375.7. The Board of Directors shall have ten members including the Lieutenant Governor or a designee, State Auditor and Inspector or a designee, one person appointed by the Governor, one person appointed by the Speaker of the House of Representatives, one member appointed by the President Pro Tempore of the Senate, and four persons elected by the policyholders of CompSource Mutual. Id. § 375.4. CompSource Mutual's board members, Chief Executive Officer, and other officers and employees will not be personally liable for any act performed in their "official capacity in good faith and without intent to defraud." Id. § 375.8.

¶24 CompSource Mutual shall have the legal right to sue and be sued, id. § 375.9; shall be subject to the premiums tax,[9] id. § 375.10(A); and shall be protected by the Oklahoma Property and Casualty Insurance Guaranty Association. Id. § 375.10(B). Subsections 375.12(A) and (B) provide that CompSource Mutual shall be a continuation of CompSource and all of CompSource's assets shall vest in CompSource Mutual on January 1, 2015:

A. All revenues, monies, and assets of CompSource Mutual Insurance Company belong solely to the Company and shall be governed by the laws applicable to domestic mutual insurance companies. The state covenants with the policyholders of the Company, persons receiving workers' compensation benefits, and the Company's creditors that the state will not borrow, appropriate, or direct payments from those revenues, monies, or assets for any purpose. The state has no liability or responsibility to the policyholders, persons receiving workers' compensation benefits, or the creditors of the Company if the Company is placed in conservatorship or receivership, or becomes insolvent.

B. CompSource Mutual Insurance Company may exercise all the rights, privileges, powers, and authority of any other mutual insurance company organized to transact workers' compensation insurance business in this state, subject to the requirements of Title 36 of the Oklahoma Statutes. Effective January 1, 2015:

1. The Company shall be considered to be a continuation of CompSource Oklahoma as it existed prior to this act; and
2. As a continuation of CompSource Oklahoma, the Company is vested with all property, tangible and intangible, real and personal, of CompSource Oklahoma and control of the CompSource Oklahoma fund.

¶25 A plain reading of the Act reveals that the operation of CompSource Mutual will have many similarities to that of CompSource. CompSource Mutual will be in the private insurance business, organized and operated under Oklahoma law, but independent of the State of Oklahoma. It will serve the public need for workers' compensation insurance. CompSource Mutual will be supervised by a board of directors, the majority of which will be appointed by the Governor or legislative officers. CompSource Mutual will be a continuation of CompSource,[10] and as a continuation of CompSource, CompSource Mutual will be vested with all of CompSource's assets. CompSource Mutual will not be permitted to dissolve except upon action by the Legislature and the Governor.

¶26 There are also noticeable differences. Some thirteen statutory schemes do not apply to CompSource Mutual that apply, at least in part, to CompSource.[11] Governmental bodies will not be required to purchase insurance from CompSource Mutual.[12] CompSource Mutual will be governed by the laws applicable to domestic mutual insurance companies.[13]

¶27 Petitioner does not question that the state may engage in private insurance business for a public purpose.[14] Petitioner questions whether our state constitution prohibits the Legislature from converting a state department, CompSource, into a private insurance company. We are guided by well established principles in assessing the conformity of a challenged state statute to our fundamental law. Liddell v. Heavner, 2008 OK 6, ¶16, 180 P.3d 1191, 1199-1200. Our state and federal constitutions are the bulwark to which all statutes must yield. In reviewing a statute for conformity to the constitution, we begin with a presumption of constitutionality. Id. A statute will be upheld unless it is clearly, palpably, and plainly inconsistent with the constitution. Id. The party challenging a statute's constitutionality has a heavy burden to establish that the statute is in excess of legislative power. Id.

¶28 Petitioner takes the position that CompSource is a "major component unit"[15] of the State, and it cannot be given away without just compensation. Okla. Const., art. X, § 15.[16] In support, petitioner refers the Court to the "2012 Comprehensive Annual Financial Report for the State of Oklahoma" which, at page 63, lists CompSource as one of eight major component units and states: "The Fund provides a source of workers' compensation insurance for all employers within the state including state agencies and other governmental units. The Fund is financed through employer premiums." Apparently, the Fund was included in the 2012 financial report because public entities purchase insurance from the Fund. However, a governmental accounting principle that requires CompSource to be included in an annual financial statement does not define the legal status of CompSource or its monies and other assets nor does it operate to destroy the pronouncements in Moran and subsequent jurisprudence.

¶29 Petitioner also contends that the Legislature has treated CompSource's money as State money when it captures CompSource's surplus funds through the "Market Equalization Assessment" much like it captures surplus funds from other state agencies. Enacted in 2009[17], 85 O.S.2011, § 401 imposes "an annual market equalization assessment" at the rate of 2.25% on: 1) all of the direct written premiums after all returned premiums are deducted and before dividends paid to policyholders are deducted, 2) all membership, application, policy and registration fees, and 3) all installment and finance fees or charges collected by CompSource, relating to written, continued and serviced insurance. Section 401 does not speak to surplus funds or the capture of agency surplus funds. Rather, the assessment in § 401 mirrors the 2.25% insurance premiums tax in 36 O.S.2011, § 624, from which CompSource is exempted. As the language "market equalization" suggests, it appears to be an assessment to put CompSource on the same footing with similarly situated private insurers bearing the premiums tax burden. See note 7 infra.

¶30 Petitioner argues that the Legislature cannot convert CompSource's assets into the assets of a private entity nor can it allow a private entity to assume assets of a state agency such as CompSource. This is so, according to petitioner, because, to qualify for the federal income tax exemption, "CompSource has affirmatively asserted that the State of Oklahoma provided its initial operating capital and that its assets will revert to the State of Oklahoma upon dissolution."[18] We reject this argument because the federal tax exemption requires that the assets revert to the State upon dissolution or that State law does not permit the dissolution of such organization. Here, § 375.3(I)(3) specifically provides that CompSource Mutual shall not be permitted to dissolve.

IV. CONCLUSION

¶31 Workers' compensation insurance and the state constitutional challenge presented in this original jurisdiction proceeding are matters imbued with serious public interest. We recognize that the statutes we review today will not become effective until January 1, 2015; however, this dispute threatens a serious disruption of our workers' compensation system.[19] Accordingly, this Court previously assumed original jurisdiction to resolve this dispute. We conclude our opinion in Moran v. State ex rel. Derryberry, 1975 OK 69, 534 P.2d 1282, remains sound law. We also conclude that CompSource's monies and other assets are held in trust for the benefit of the employers and employees protected by the insurance issued by CompSource; the Oklahoma Constitution does not prohibit the Legislature from placing CompSource's money and other assets in trust with a domestic mutual insurer; and when transferred to CompSource Mutual, the trust impressed upon CompSource's money and other assets will continue.

EXTRAORDINARY WRIT DENIED.

ALL JUSTICES CONCUR.

APPENDIX TO OPINION

85 O.S.Supp.2013, Section 375.3, reads:

Section A. Effective January 1, 2015, CompSource Oklahoma shall operate as, and exercise the powers of, a domestic mutual insurer without capital stock or shares, in accordance with Title 36 of the Oklahoma Statutes, and shall be called CompSource Mutual Insurance Company. The Insurance Commissioner shall approve the Company's articles of incorporation and issue a certificate of authority to the Company to write workers' compensation insurance, as provided by Title 36 of the Oklahoma Statutes, not later than August 1, 2014, which shall become effective January 1, 2015. The Chief Executive Officer of CompSource Oklahoma shall take any measure necessary to accomplish the transition from CompSource Oklahoma to CompSource Mutual Insurance Company.

B. The Company shall be organized as a corporation benefitting the citizens of Oklahoma by providing workers' compensation and related coverages which are competitively priced that generally benefit the public, but remain a financially independent entity that is neither more nor less than self-supporting.

C. The Company may provide related coverage which is incidental to workers' compensation insurance, including but not limited to coverage for risks under the Longshore and Harbor Workers' Compensation Act (33 U.S.C. Section 901 et seq.) and Title IV of the Federal Coal Mine Health and Safety Act of 1969 as amended by the Black Lung Benefits Act of 1972, as enacted or as may be amended by the Congress of the United States and other coverage related to employee and employment risks.

D. The Company shall provide workers' compensation insurance coverage for volunteer firefighters as provided in Section 380 of Title 85 of the Oklahoma Statutes, as amended by this act.

E. The Company shall be an insurance carrier for purposes of the Workers' Compensation Code.

F. Except as otherwise provided in this act, the Company shall be subject to the requirements of Title 36 of the Oklahoma Statutes and all regulatory authority granted to the Insurance Commissioner as would any other domestic mutual insurance company.

G. The Company shall be exempt from the following provisions of Title 36 of the Oklahoma Statutes until three (3) years after the Company begins operating pursuant to subsection A of Section 3 of this act:

1. Article 9 [Oklahoma Insurance Rating Act for casualty insurance];

2. Article 9A [general insurance rating], other than Section 924.2 [reduced premiums for occupational safety plans] of Title 36 of the Oklahoma Statutes; and

3. Article 9B [Property and Casualty Competitive Loss Cost Rating Act].

H. CompSource Mutual Insurance Company shall not be considered a state agency, public body, department, public trust, or any other term used to describe an entity which is a part of the Executive Branch of the State of Oklahoma under any state statute or regulation, except as otherwise provided for in the CompSource Mutual Insurance Company Act. As such, Oklahoma state statutes that shall not apply to CompSource Mutual Insurance Company include, but are not limited to:

1. Sections 301 through 314 of Title 25, Oklahoma Open Meeting Act;

2. Sections 151 through 158.2 of Title 47, State-Owned Automobiles;

3. Sections 24A.l through 24A.29 of Title 51, Oklahoma Open Records Act;

4. Sections 151 through 200 of Title 51, The Governmental Tort Claims Act;

5. Title 61 of the Oklahoma Statutes, Public Buildings and Public Works;

6. Title 62 of the Oklahoma Statutes, Public Finance;

7. Sections 3-101 through 3-115 of Title 65, Department of Libraries;

8. Sections 201 through 217 of Title 67, Records Management Act;

9. Sections 301 through 303 of Title 67, Reproduction of Public Records;

10. Sections 305 through 317 of Title 67, Archives and Records Commission;

11. Sections 82.1 through 97 of Title 73, Capitol Grounds and Surroundings;

12. Chapters 4, 8, 10, 13, 17, 19, 27A, 30, 31, 37, 37A, 37B, 38A, 38B, 45, 45A, 48, 49, 50, 53, 56, 61, 81 and 110A of Title 74; and

13. Section 34.2 of Title 80.

I. By enacting the CompSource Mutual Insurance Company Act, the Legislature creates CompSource Mutual Insurance Company which, subject to the provisions of this act:

1. Shall be organized and operated under Oklahoma law, but be independent of the State of Oklahoma;

2. Shall provide workers' compensation insurance to any employer in Oklahoma which seeks such insurance and meets other reasonable requirements relating thereto;

3. Shall not be permitted to dissolve; and

4. Shall have a majority of the Board of Directors or oversight body of such organization appointed by the Governor or legislative officers as specified in Section 4 of this act.

J. Effective January 1, 2015, any references in the Oklahoma Statutes to CompSource Oklahoma or The State Insurance Fund shall be deemed references to CompSource Mutual insurance Company.

FOOTNOTES

[1] Petitioner did not present full legal argument with authorities in support of the asserted violations of the prohibitions in the Okla. Const., art. II, § 15 and art. V, § 55. Accordingly, we do not consider these challenges. Okla.Sup.Ct.R., Rule 1.11(k) (as amended June 14, 2013, effective August 1, 2013, 2013 OK 67).

[2] A revolving fund is a special fund in the State Treasury created by legislative act for a special purpose; a revolving fund may include direct taxes, fees, or other revenue dedicated to the special purpose; the legislative act creating the revolving fund and dedicating money to the revolving fund constitutes a continuing appropriation of the money which may be expended only for the special purpose; and, if the special fund is created from sources other than the general revenue fund, the special fund expenditures may not create an indebtedness against the State nor be payable out of, or charged against, the general revenue funds of the State. Edwards v. Childers, 1924 OK 652, 228 P. 472; Draper v. State Bd. of Equalization, 1966 OK 87, 414 P.2d 276.

[3] The 1933 enactment made an appropriation of $25,000.00 for the purpose of paying awards from the Fund and directed that the $25,000.00 "shall be repaid to the State and refunded to the General Revenue Fund." 1933 Okla. Sess. Laws, ch. 28, art. 2, § 22. The "any specific appropriation" language in art. 2, §1(a) of the 1933 enactment was not included in the 1937 version of the statute. There is some question as to whether the Legislature actually appropriated the initial $25,000.00, Moran, 1975 OK 69 at ¶17, 534 P.2d at 1285, but no party here argues that the $25,000.00 was not repaid from the Fund if the appropriation was made.

[4] Presently, there are eight members of the Board of Managers of CompSource; they are the Director of the Office of Management and Enterprise Services or a designee, the Lieutenant Governor or a designee, the State Auditor and Inspector or a designee, one person appointed by the Governor, two persons appointed by the Speaker of the House of Representatives, and two persons appointed by the President Pro Tempore of the Senate. 85 O.S.2011, § 376.

[5] 85 O.S.2011, § 377.

[6] The exceptions are 85 O.S.2011, § 380 concerning volunteer firefighters will be superceded effective January 1, 2015; § 383 concerning warrants, checks, vouchers, etc., § 396 concerning non-disclosure of certain information, and §§ 398 and 399 concerning self insurance are not repealed; and section 52 of the Act repealed § 378. 2013 Okla. Sess. Laws, ch. 254, § 52.

[7] In Wright the Petroleum Storage Tank Release Indemnity Fund in the State Treasury consisted of funds collected from an one-cent per gallon assessment upon the sale of motor fuel which the Legislature declared would not become state funds at any time. The Wright opinion recognized that a mere legislative declaration does not, by itself, remove the public nature of the funds. 2007 OK 73 at ¶23, 170 P.3d at 1033.

[8] Section 375.3 clearly expresses legislative intent that CompSource Mutual shall not be clothed as an Oklahoma governmental department. Section 375.3, in its entirety, is set out in the appendix to this opinion.

[9] Private insurers pay a 2.25% tax on premiums. 36 O.S.2011, § 624. Since 2010, CompSource has paid a 2.25% annual market equalization assessment on premiums.

[10] As a continuation of CompSource, the Act provides that persons who are employed by CompSource and participate in the Oklahoma Public Employees Retirement System (OPERS) shall, as employees of CompSource Mutual, remain members of OPERS. We note this could, if applied, create State liability for retirement benefits earned in private employment, an issue not before us today.

[11] 85 O.S.Supp.2013, § 375.3(H)(1) - (12).

[12] Since enactment of the state insurance code in 1957, the statutes have allowed governmental bodies to be members of a domestic mutual insurer. 1957 Okla. Sess. Laws, p. 307, § 2115 (now codified at 36 O.S.2011, § 2115).

[13] A mutual insurance company is an incorporated insurer without capital stock or shares, and it is owned by its policyholders. 36 O.S.2011, § 2103. Although the ownership of the assets of CompSource Mutual is not before us, it appears that the policyholders will have responsibility for CompSource's assets held in trust for the insured employers and their employees when those trust assets are transferred to CompSource Mutual. We note that a mutual insurer is required to hold all prepaid premiums and fees in trust, 36 O.S.2011, 2110(A), while § 2110(B) provides that when the certificate of authority is issued to the mutual insurer, all funds so held in trust shall become the funds of the insurer.

[14] Okla. Const., art. II, § 31 provides: "The right of the State to engage in any occupation or business for public purposes shall not be denied nor prohibited, except that the State shall not engage in agriculture for any [purpose] other than educational and scientific purposes and for the support of its penal, charitable, and educational institutions."

[15] "Major component unit" is a term of art used by the Governmental Accounting Standards Board (GASB) for state and local governments which provides guidance for basic financial statements and financial reporting considerations. Until July of 2012, the major component unit would be included in the government's financial report if the legally-separate entity is fiscally dependent on the government or the government has operational responsibility for the entity. In this case the Board of Managers has operational supervision over CompSource. After July of 2012, a major component unit should not be included unless there is a financial benefit or burden relationship between the government and the component unit. Governmental Audit Quality Center, American Institute of CPAs, Implementation Considerations of GASB 61 (2012) available at http://www.aicpa.org (search for "considerations of GASB 61"; follow "Implementation Considerations of GASB 61" hyperlink). In this case, under Moran, there is no benefit or burden relationship between CompSource and the State.

[16] The Oklahoma Constitution, art. X, § 15(A) reads:

A. Except as provided by this section, the credit of the State shall not be given, pledged, or loaned to any individual, company, corporation, or association, municipality, or political subdivision of the State, nor shall the State become an owner or stockholder in, nor make donation by gift, subscription to stock, by tax, or otherwise, to any company, association, or corporation.

[17] 2009 Okla. Sess. Laws, ch. 426, § 21, renumbered from Title 85, § 154 by Okla. Sess. Laws 2011, ch. 318, § 88.

[18] The federal income tax exemption in 26 U.S.C. § 501(c)(27)(B)(iii)(I) and (II) provide:

(I) the State makes a financial commitment with respect to such organization either by extending the full faith and credit of the State to the initial debt of such organization or by providing the initial operating capital of such organization, and (II) in the case of periods after the date of enactment of this subparagraph, the assets of such organization revert to the State upon dissolution or State law does not permit the dissolution of such organization. . . .

[19] We previously assumed original jurisdiction, thereby deciding that judicial restraint is inappropriate here. See Keating v. Johnson, 1996 OK 61, 918 P.2d 51.






 Citationizer© Summary of Documents Citing This Document
Cite
 Name
 Level
 None Found.
Citationizer: Table of Authority
Cite
 Name
 Level
 Oklahoma Attorney General's Opinions Cite
Name
Level 2011 OK AG 14, Question Submitted by: The Honorable Mary Fallin, Governor of the State of Oklahoma
Cited
Oklahoma Court of Criminal Appeals Cases Cite
Name
Level 1999 OK CR 14, 989 P.2d 949, 70 OBJ 1076, State v. Young
Discussed
Oklahoma Supreme Court Cases Cite
Name
Level 1939 OK 248, 93 P.2d 1092, 185 Okla. 444, O. K. CONSTR. CO. v. BURWELL
Discussed at Length 2001 OK 11, 19 P.3d 276, 72 OBJ 545, FEHRING v. STATE INS. FUND
Discussed at Length 1936 OK 568, 66 P.2d 45, 179 Okla. 432, BAKER v. TULSA BLDG. & LOAN ASS'N.
Discussed 1954 OK 171, 278 P.2d 841, STATE v. DISTRICT COURT OF OKLAHOMA COUNTY
Discussed at Length 1958 OK 282, 333 P.2d 508, STATE INSURANCE FUND v. TARON
Discussed 1959 OK 135, 344 P.2d 562, STATE v. BONE
Discussed at Length 1934 OK 66, 32 P.2d 913, 168 Okla. 337, ATLAS WIRING CO. v. DORCHESTER
Discussed 1966 OK 87, 414 P.2d 276, DRAPER v. STATE BOARD OF EQUALIZATION
Discussed 1996 OK 61, 918 P.2d 51, 67 OBJ 1680, Keating v. Johnson
Discussed 2007 OK 73, 170 P.3d 1024, STATE ex rel. WRIGHT v. OKLAHOMA CORPORATION COMMISSION
Discussed at Length 2008 OK 6, 180 P.3d 1191, LIDDELL v. HEAVNER
Discussed 1924 OK 652, 228 P. 472, 102 Okla. 158, EDWARDS v. CHILDERS
Discussed 2012 OK 75, 298 P.3d 520, ZALOUDEK GRAIN COMPANY v. COMPSOURCE OKLAHOMA
Discussed at Length 1975 OK 69, 534 P.2d 1282, MORAN v. STATE EX REL. DERRYBERRY
Discussed at Length 2013 OK 67, IN RE AMENDMENTS TO OKLAHOMA SUPREME COURT RULES
Cited 1980 OK 60, 610 P.2d 237, Hershel v. University Hospital Foundation
Discussed 1944 OK 215, 151 P.2d 399, 194 Okla. 324, RUCKS-BRANDT CONSTR. CORP. v. SILVER
Discussed 1983 OK 82, 672 P.2d 1153, Vanderpool v. State
Discussed
Title 36. Insurance Cite
Name
Level 36 O.S. 624, Report to Chief Officer of Premiums, Membership, Application, and Fees - Payment of Fees and Taxes - Penalty
Discussed 36 O.S. 2103, "Mutual" Insurer Defined
Cited 36 O.S. 2115, Membership in Mutuals
Cited 36 O.S. 3639, Cancellation Requirements - Notice - Reasons to Cancel - Premium Increases
Cited
Title 51. Officers Cite
Name
Level 51 O.S. 166, Governmental and Proprietary Functions of Political Subdivisions - Application of Act
Cited
Title 74. State Government Cite
Name
Level 74 O.S. 85.29, Schedule of Amounts of Surety Required
Cited
Title 85. Workers' Compensation Cite
Name
Level 85 O.S. 152, Repealed by Laws 1978, HB 1628, c. 97, § 1, eff. October 1, 1978
Discussed 85 O.S. 375, Renumbered as 85 O.S. § 376.1 by Laws 2013, HB 2201, c. 254, § 54
Discussed at Length 85 O.S. 376, Renumbered as 85 O.S. § 376.2 by Laws 2013, HB 2201, c. 254, § 54
Cited 85 O.S. 377, Repealed by Laws 2013, HB 2201, c. 254, § 53, eff. January 1, 2015
Cited 85 O.S. 380, Volunteer Fire Departments - Volunteer Firefighter Group Insurance Pool
Cited 85 O.S. 382, Repealed by Laws 2013, HB 2201, c. 254, § 53, eff. January 1, 2015
Cited 85 O.S. 401, Repealed by Laws 2013, HB 2201, c. 254, § 53, eff. January 1, 2015
Cited 85 O.S. 375.1, Short Title
Discussed at Length 85 O.S. 375.3, CompSource Mutual Insurance Company - Transition - Organization - Status
Cited 85 O.S. 131, Renumbered as 85 O.S. § 375 by Laws 2011, SB 878, c. 318, § 88
Discussed at Length 85 O.S. 131a, Renumbered as 85 O.S. § 376 by Laws 2011, SB 878, c. 318, § 88
Cited 85 O.S. 132, Renumbered as 85 O.S. § 379 by Laws 2011, SB 878, c. 318, § 88
Cited 85 O.S. 133, Renumbered as 85 O.S. § 381 by Laws 2011, SB 878, c. 318, § 88
Cited 85 O.S. 134, Renumbered as 85 O.S. § 382 by Laws 2011, SB 878, c. 318, § 88
Discussed 85 O.S. 135, Renumbered as 85 O.S. § 383 by Laws 2011, SB 878, c. 318, § 88
Cited