OSCN Found Document:Questions Submitted by: The Honorable Glen Mulready and the Honorable Jason Blair

 

 
 Questions Submitted by: The Honorable Glen Mulready and the Honorable Jason Blair
2025 OK AG 18
Decided: 12/16/2025
OKLAHOMA ATTORNEY GENERAL OPINIONS
Cite as: 2025 OK AG 18, __ P.3d __

 

¶0 This office has received your request for an Attorney General Opinion in which you ask, in effect, the following questions:

1. Does article X, section 15 of the Oklahoma Constitution prohibit the State of Oklahoma from creating and owning a captive insurance company, as the term is used in the Oklahoma Captive Insurance Company Act, 36 O.S.2021 & Supp.2022, §§ 6470.1--6470.35?

2. Does article X, section 17 of the Oklahoma Constitution prohibit the Legislature from enacting laws to permit a political subdivision of the State of Oklahoma to create and own a captive insurance company, as the term is used in the Oklahoma Captive Insurance Company Act, 36 O.S.2021 & Supp.2022, §§ 6470.1--6470.35?

I.

SUMMARY

¶1 The answer to both questions is no. While sections 15 and 17 of Article X of the Oklahoma Constitution prohibit the State and its political subdivisions from owning a "company, association, or corporation," this prohibition is intended to prevent public aid to or investment in private entities. A captive insurance company wholly owned by the State or a political subdivision, and existing only to insure against that body's risk exposure, does not implicate these concerns. However, this Opinion is subject to the caveats set forth in Section III, infra.

II.

BACKGROUND

¶2 A general definition of "captive insurance company" is as follows:

A "captive insurance company" is a risk-financing method or form of self-insurance involving the establishment of a subsidiary corporation or association organized to write insurance. Captive insurance companies operate just like ordinary insurers in nearly every respect, however, their distinguishing feature is that they may only cover the risks of their parent companies and related entities.

¶3 JORDAN PLITT, ET AL., COUCH ON INSURANCE § 39:2 (3d ed. Dec. 2025 update), Westlaw COUCH. See also Captive insurance, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining "captive insurance" as "[i]nsurance that provides coverage for the group or business that established it"). Utilizing a captive insurance company "can bring tax, economic, and commercial benefits including access to reinsurance markets," while at the same time providing a means "to insure risks that are otherwise difficult to insure on the traditional insurance market." COUCH ON INSURANCE § 39:2; ROBERT PERSONS & KEN BROWNLEE, EXCESS LIABILITY: RIGHTS AND DUTIES OF COMMERCIAL RISK INSUREDS AND INSURERS pt. 1, § 3:24 (Apr. 2025 update), Westlaw EXLINS (listing the reduction of administrative and legal costs, predictability of premiums, and control over claims-handling philosophy as benefits of captive insurance companies).

¶4 Oklahoma is one of several states that license and regulate captive insurers. The Oklahoma Captive Insurance Company Act ("Act") requires captive insurance companies36 O.S.Supp.2022, § 6470.3Id. § 6470.3(C)(1). Once licensed, that captive insurer is subject to oversight by the Commissioner, including annual reporting and regulatory examination. 36 O.S.2021, §§ 6470.11

¶5 In your request, you state that public bodies--both state entities and political subdivisions--have increasingly considered forming their own captive insurance companies as an alternative to the private insurance market or other providers. Indeed, several states have enacted statutes specifically allowing the state or its political subdivisions to do exactly that. See, e.g., ARK. CODE ANN. § 19-3-506; 215 ILL. COMP. STAT. 5/123C-1(B), (I); IOWA CODE § 521J.1(31). To determine whether Oklahoma can do the same, you have asked whether certain provisions of the Oklahoma Constitution prohibit the State or its political subdivisions from owning a captive insurance company.

III.

DISCUSSION

¶6 Before turning to this question, it is important to understand what this Opinion does not address. First, you advised that this Opinion may inform proposed legislation to specifically allow the State or a political subdivision to form and own a captive insurance company. However, this office has not reviewed or provided input on any draft bills. Second, this Opinion does not address whether any other statutory or constitutional provisions bear upon the question of a State or a political subdivision forming and owning a captive insurance company. Only the provisions you asked this office to consider are addressed in this Opinion. And third, this Opinion does not reach the question of whether any particular entity form--e.g., stock or nonstock corporation, LLC, or similar--would be more or less appropriate to serve as a captive insurance company for the State or a political subdivision. 

¶7 Turning now to the constitutional provisions referenced in your request, article X, section 15 of the Oklahoma Constitution provides, in pertinent part, as follows:

[T]he credit of the State shall not be given, pledged, or loaned to any individual, company, corporation, or association, municipality, or political subdivision of the State, nor shall the State become an owner or stockholder in, nor make a donation by gift, subscription to stock, by tax, or otherwise, to any company, association, or corporation.

¶8 OKLA. CONST. art. X, § 15(A) (emphasis added). Similarly, article X, section 17 prohibits the Legislature from "authoriz[ing] any county or subdivision thereof, city, town, or incorporated district, to become a stockholder in any company, association, or corporation, or to obtain or appropriate money for, or levy any tax for, or to loan its credit to any corporation, association, or individual." OKLA. CONST. art. X, § 17. These are simply two versions of the same prohibition: section 15 applies against the State, and section 17 against political subdivisions. In re Okla. Dev. Fin. Auth., 2004 OK 2689 P.3d 1075In re Pet. Of Univ. Hospitals Auth., 1997 OK 162953 P.2d 314Lawrence v. Schellstede, 1960 OK 10348 P.2d 1078

¶9 At first blush, these provisions might seem to prohibit the State and its political subdivisions from owning, investing in, or otherwise contributing funds to any "company, association, or corporation" for any purpose. However, constitutional provisions "must be construed as a consistent whole in harmony with common sense and reason." Cowart v. Piper Aircraft Corp., 1983 OK 66665 P.2d 315see also Capital Steel & Iron Co. v. Fuller, 1952 OK 209245 P.2d 1134private entities by way of gift or direct investment. See Veterans of Foreign Wars v. Childers, 1946 OK 211171 P.2d 618Hawks v. Bland, 1932 OK 1019 P.2d 720see also Rural Water Dist. No. 3, Pushmataha Cty. v. Antlers Pub. Works Auth., 1993 OK CIV APP 185866 P.2d 458 (describing article X, section 17 as a "prohibition against some of the grosser forms of raids on public money perpetuated in the earlier history of this country") (quoting Maurice H. Merrill, The Constitutional Rights of Oklahoma Cities, 21 OKLA. L. REV. 251, 259-60 (Aug. 1968)).

¶10 The formation and ownership of a captive insurance company by the State or a political subdivision does not, by itself, implicate these concerns. The purpose of a captive insurance company is to provide insurance coverage to its parent, and perhaps related entities. 36 O.S.Supp.2022, § 6470.3

¶11 This conclusion is also consistent with the Oklahoma Supreme Court's decision in Lawrence v. Schellstede, 1960 OK 10348 P.2d 1078Id. ¶ 8, 348 P.2d at 1080. After reviewing the purpose of article X, section 17, the terms of the policy, and persuasive authority from other states, the court concluded that, notwithstanding the policy's terms, "[m]ere membership in a mutual insurance company does not offend the constitutional limitation unless such membership would constitute a stockholder or create a liability or obligation not present in the case at bar." Id. ¶ 24, 348 P.2d at 1082. To hold otherwise, according to the court, would "unduly extend[] the scope of the constitutional limitation," to disallow standard business of a public entity that does not risk its funds being used to benefit private interests. Id. ¶ 25, 348 P.2d at 1082--83.

¶12 The court's reasoning in Schellstede applies equally here. If the State or a political subdivision forms and owns a captive insurance company solely to manage its own risk, that does not, by itself, present an opportunity for public funds to be used to fund private interests. Of course, captive insurance structures can be complicated, and Attorneys General in other states have concluded that public entity participation in captive insurance programs violated their states' analogous constitutional provisions where the captive insurer was a private company or included private interests. Ohio Op. Atty. Gen. No. 2021-24, 2021 WL 5299766, *4 (Nov. 2, 2021); Neb. Op. Atty. Gen. No. 94045, 1994 WL 243685, *2--3 (May 12, 1994); Miss. A.G. Opin., 1987 WL 121805, *1 (Aug. 7, 1987). Accordingly, the State and political subdivisions must carefully structure a public entity captive insurer in a way that avoids participation by or entanglement with private interests.

¶13 Finally, it is worth mentioning that state or local involvement in the insurance business would not be a new development. Both the State and its political subdivisions are given broad authority to procure insurance to mitigate risk. See 74 O.S.Supp.2024, § 85.58A51 O.S.2021, §§ 167Tulsa Stockyards, Inc. v. Clark, 2014 OK 14321 P.3d 185Tulsa Stockyards seemed to accept without dispute "that the state may engage in private insurance business for a public purpose." Id. ¶ 27, 321 P.3d at 196 (citing OKLA. CONST. art. II, § 31). This history supports the conclusion that article X, section 15 does not bar the State--and by similar logic, article X, section 17 does not bar political subdivisions--from insuring their own risk through the formation and ownership of a captive insurance company. 

¶14 It is, therefore, the official Opinion of the Attorney General that:

1. Article X, Section 15 of the Oklahoma Constitution does not prohibit the State of Oklahoma from creating and owning a captive insurance company, as the term is used in the Oklahoma Captive Insurance Company Act, 36 O.S.2021 & Supp.2022, §§ 6470.1--6470.35.

2. Article X, Section 17 of the Oklahoma Constitution does not prohibit the Legislature from enacting laws to permit a political subdivision of the State of Oklahoma to create and own a captive insurance company, as the term is used in the Oklahoma Captive Insurance Company Act, 36 O.S.2021 & Supp.2022, §§ 6470.1--6470.35.

GENTNER DRUMMOND
ATTORNEY GENERAL OF OKLAHOMA

ETHAN SHANER
DEPUTY GENERAL COUNSEL

FOOTNOTES

[1] The Act defines "captive insurance company" simply by reference to the seven types of captive insurers that may be formed and/or licensed under the Act. 36 O.S.Supp.2022, § 6470.2Id.

36 O.S.2021, § 6470.10

See, e.g., Bd. of Cty Comm'rs of Okla. Cnty. v. Warram, 1955 OK 198285 P.2d 103460 O.S.1951, § 17660 O.S.Supp.2025, § 176

2003 OK AG 21

See OKLA. CONST. art. X, § 15(A) ("[T]he credit of the State shall not be given, pledged, or loaned to any ... municipality, or political subdivision of the State[.]"). For instance, the Oklahoma Supreme Court has held that section 15 prohibits a financing arrangement where a State instrumentality issues bonds for the benefit of a particular municipality, In re Okla. Cap. Improvement Auth., 2012 OK 99289 P.3d 1277Reherman v. Okla. Water Res. Bd., 1984 OK 12679 P.2d 1296

and is owned by its policyholders." 36 O.S.2021, § 2103Id. §§ 2115, 2116, 2123.

Tulsa Stockyards--i.e., the constitutionality of legislation requiring CompSource Oklahoma to be converted from a department of the State into a private mutual insurer independent of the State--is not a one-to-one comparison to the issue posed here. But the court's approach to the question, and its recitation of the State's history in the insurance business, is nonetheless instructive. For example, the court explains that "Oklahoma law is clear that CompSource ... [was] created to conduct insurance business for employers as a private carrier might do so as to be fairly competitive with private insurance carriers and be nothing more than self-supporting." Id. ¶ 19, 321 P.3d at 193. If these activities undertaken by the State are permitted by the Oklahoma Constitution, a State-owned captive insurance company to manage the State's risk seems equally allowable.